STATE OF CONNECTICUT *v.* ROBERT NORTHROP
(AC 25184)

Schaller, McLachlan and Harper, Js.

Argued September 19—officially released December 6, 2005

*Todd A. Bussert,* for the appellant (defendant).

*Frederick W. Fawcett,* supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *John C. Smriga,* supervisory assistant state's attorney, for the appellee (state).

HARPER, J. The defendant, Robert Northrop, appeals from the judgment of conviction, following a jury trial, of reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a) and carrying a pistol without a permit in violation of General Statutes § 29-35 (a).[1] The defendant also appeals from the court's judgment finding him in violation of probation.[2] The defendant claims that the evidence did not support either his conviction or the court's finding that he had violated the terms of his probation. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Edward Geyer and the defendant were acquaintances for many years. Approximately two weeks prior to February 27, 2002, Geyer and a friend were at a bar in Bridgeport. The defendant and Geyer's friend got into a fight. The defendant subsequently went to Geyer's house and, in the presence of Geyer's family, angrily confronted Geyer about the incident. After the defendant challenged Geyer to a fight, Geyer struck the defendant.

During the early morning hours of February 27, 2002, Geyer and some of his friends were socializing at another bar in Bridgeport. The defendant was present at the bar, and he and Geyer observed one another. At approximately 1 a.m., Geyer and his friends left the bar. They walked toward Geyer's automobile, which was parked on a side street near the bar. Suddenly, the defendant came out of the bushes and pointed a pistol at Geyer. The defendant stated: "[W]hat now? What now? What now?" Geyer raised his hands. The defen-

---

[1] The jury found the defendant not guilty of the crimes of attempt to commit murder and attempt to commit assault in the first degree.

[2] The court sentenced the defendant to a total effective term of incarceration of nine years.

dant pulled the trigger on his pistol twice, but the pistol did not discharge.

Geyer ran in the direction of police officers who were on duty near the entrance of the bar. As he fled, he heard the sound of gunshots and he ducked from the bullets that he heard "whizzing" by him. Geyer did not sustain any bodily injuries and later identified the defendant, who was in police custody, as the shooter. Additional facts will be discussed as necessary.

## I

The defendant first challenges the sufficiency of the evidence to sustain his conviction of reckless endangerment in the first degree and of carrying a pistol without a permit. We find no merit to the defendant's unpreserved claim.[3]

Our role in reviewing a sufficiency of the evidence claim is well settled. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of

[3] Although the defendant did not preserve his claim, we review the claim because it implicates his constitutional right not to be convicted on insufficient proof. See, e.g., *State* v. *Morgan*, 70 Conn. App. 255, 281, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002).

the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Mulero*, 91 Conn. App. 509, 512–13, 881 A.2d 1039 (2005).

The defendant argues that the verdict rests "on a factual impossibility . . . ." The state presented evidence from Geyer and Officers David Neary and Christopher Robinson of the Bridgeport police department concerning the defendant's conduct on February 27, 2002. Neary and Robinson were on duty outside of the bar at the time of the incident in question. Neary testified that he observed the defendant leave the bar and drive away and that approximately fifteen to thirty seconds later, he heard the sound of gunshots. Neary pursued an individual running from the scene of the shooting and identified that individual as the same person he had observed leaving the bar. After Geyer identified the defendant as the shooter, Neary and his fellow officers arrived at the defendant's residence. Neary testified that he observed the same automobile that the suspect had been driving outside of the bar and observed a gun holster as well as a windshield advertisement from the bar in the automobile. While in the defendant's residence, Neary found articles of clothing that matched the clothing worn by the individual that he had observed leaving the bar and fleeing from the scene of the shooting. Robinson testified that he had observed the individual, matching the defendant's description, leaving the bar. Robinson testified that he had heard the sound of gunshots fewer than five minutes thereafter and that Neary had pursued the fleeing suspect on foot.

Geyer testified as to the events that transpired prior to and during the shooting incident. He testified that he and the defendant had a disagreement prior to February 27, 2002. He testified that he and the defendant made eye contact in the bar prior to the shooting. Geyer testified that as he made his way to his automobile

near the bar, the defendant jumped out of the bushes brandishing a handgun. The defendant addressed Geyer and twice pulled the trigger, but the handgun did not discharge. Finally, Geyer testified that as he fled from the defendant, he heard gunshots "whizzing" by him.

The defendant asks this court to compare Geyer's testimony with Neary's testimony. The defendant argues that the time lines of events described by each witness cannot be reconciled. The defendant argues, essentially, that Neary's testimony that the defendant drove away from the bar less than thirty seconds before the shooting occurred precludes a finding that the defendant could have performed the criminal actions described by Geyer and precludes a finding of guilt. The defendant raised those arguments before the jury in an attempt to cast doubt on the state's case. Those efforts failed. The defendant's claim is without merit because the jury's role was to weigh conflicting evidence. The jury was free to credit the testimony of any of the state's witnesses, in whole or in part, and to disregard the testimony of any of the state's witnesses, in whole or in part. See State v. Stewart, 77 Conn. App. 393, 400, 822 A.2d 392, cert. denied, 265 Conn. 906, 831 A.2d 253 (2003). It would not have been unreasonable for the jury to find that the testimony of Geyer and Robinson concerning the timing of events, rather than that of Neary, more accurately reflected the timing of events leading to the shooting. Geyer's testimony, whether corroborated or countered by that of another witness, provided a sufficient basis for finding that the defendant followed Geyer out of the bar, lay in wait for Geyer and later fired gunshots at Geyer as Geyer fled.[4]

The defendant also challenges the credibility of Geyer's testimony. The defendant apparently argues that

---

[4] Insofar as the defendant challenges the conviction for carrying a pistol without a permit, he stipulated at trial that he had not been issued a firearm permit.

the jury should have discredited Geyer's testimony at trial because, in a statement he gave to an investigator for the defense prior to trial, Geyer expressed uncertainty that the defendant was the perpetrator of the crime. At trial, Geyer disavowed that statement. Geyer testified that he had lied to the investigator because he was motivated by greed to do so. Geyer also testified that in other statements he gave prior to trial and in his trial testimony in which he identified the defendant, he was telling the truth. The defendant also argues that Geyer was a paid informant who testified against him because of self-interest.

Those challenges to Geyer's credibility were certainly fodder for the jury's consideration, and the record reflects that the defendant raised those arguments during cross-examination and closing argument. The defendant's efforts to discredit Geyer failed. It is the jury's province, not ours, to evaluate Geyer's credibility. "This court will not revisit credibility determinations. Whether [a witness'] testimony [is] believable [is] a question solely for the jury. It is . . . the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Falcon*, 90 Conn. App. 111, 132, 876 A.2d 547, cert. denied, 275 Conn. 926, 888 A.2d 1248 (2005).

Additionally, Neary testified that he observed the defendant pass in front of his police cruiser as the defendant left the bar prior to the shooting and observed the defendant running from the scene of the shooting. The defendant challenges the weight, if any, that the jury could have afforded Neary's identification of him as the suspect Neary observed running from the scene. The defendant suggests that the distance between Neary and the suspect, poor lighting conditions on the street and other factors that came into play at the time of Neary's observation of the suspect cast serious doubt

on the accuracy of Neary's identification. The defendant raised those arguments before the jury. On the basis of our review of Neary's testimony, as well as other evidence presented at trial, we conclude that it was not unreasonable for the jury to credit Neary's observations, as well as his identification of the defendant. In any event, the state presented identification evidence from Neary and Geyer, and, as we have stated, Geyer's testimony provided a sufficient evidentiary foundation on which the jury could have based its verdict.

II

The defendant also argues that the evidence did not support the court's finding that he had violated the terms of his probation. We disagree.

The defendant bases his claim on his contention that the evidence was not sufficient to support his conviction of reckless endangerment in the first degree and carrying a pistol without a permit. He argues that the evidence demonstrated the physical impossibility of his having committed the crimes of which he was convicted and that he was inadequately identified by Geyer and Neary. The court relied on the defendant's conviction in finding him in violation of probation and in determining that the beneficial aspects of probation were no longer being served. We already have rejected the defendant's challenges to the sufficiency of the evidence in part I. It is not disputed that one of the conditions of his probation was that he not violate any of the criminal laws of this state or that the conduct underlying the crimes occurred during the defendant's probationary period. We reject the defendant's claim that the record did not contain sufficient proof for the court to determine, by a preponderance of the evidence, that he had committed acts that violated the terms of his probation. See *State* v. *Cator*, 256 Conn. 785, 811–12, 781 A.2d 285

(2001); *State* v. *Roberson*, 165 Conn. 73, 80, 327 A.2d 556 (1973).

The judgment is affirmed.

In this opinion the other judges concurred.