## STATE OF CONNECTICUT *v.* MARCUS MOYE
### (AC 29894)

Bishop, McLachlan and Borden, Js.

Argued November 12, 2008—officially released February 10, 2009

*Elizabeth M. Inkster*, senior assistant public defender, for the appellant (defendant).

*Bruce R. Lockwood,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James G. Clark,* senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Marcus Moye, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a and possession of a pistol or revolver without a permit in violation of General Statutes § 29-35. On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction and (2) the trial court improperly refused to charge the jury as he requested. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 3, 2003, at 8 p.m., Joshua Brown was fatally shot in the area of George and Day Streets in New Haven. While en route to the scene of the shooting, Officer Daniel Sacco observed a heavyset black male, wearing a white jersey, on a BMX bicycle, riding away from the scene. Once at the scene, Sacco observed the victim lying face down. Sacco quickly discerned that the victim had been shot in the chest. He recognized the victim as Brown, also known as "Doo Doo" Brown, who was associated with the "Tre Bloods," a gang from the area. Sacco was aware that the "Tre Bloods" were feuding with "The Ville," another local gang. Later, the medical examiner determined that the victim's death was caused by a gunshot. While at the scene, Sacco questioned fifteen year old Kathy Booker, who informed him that at 8 p.m. she heard a gunshot and saw a heavyset black male, clean shaven, wearing a white jersey with possibly the number six on it, riding a bicycle away from the scene of the shooting. Sacco provided Booker's description to the police dispatcher. After hearing the broadcast, Officer Dean Reynolds observed

a man on a bike matching Sacco's description. Reynolds chased the biker but lost him. Reynolds eventually found the suspect thirty minutes later, wearing different clothes. At trial, he confirmed the suspect's identity as that of the defendant.

On August 5, 2003, Courtney Taft gave a statement to the police describing her encounter with the defendant on the night of the shooting. She stated that she was sitting on her porch with some friends when the defendant called her over to speak with him. The defendant told her that he had just shot "Doo Doo Brown." He also informed Taft that he had a gun that needed to be buried. Taft, who knew the defendant, identified him from a photographic array and in court.

On August 10, 2003, the police questioned fourteen year old Marvin Gore about an attempted robbery of which he was the victim. Gore informed the police that on August 3, between 7 and 8 p.m., the defendant, wearing a blue scarf on his head and a black jersey with the number six on it, approached him on a bike, pulled a gun from his pocket and ordered him to "give me everything in your pockets." After Gore responded that he had nothing, the defendant struck him in the head with the gun. The attempted robbery occurred four blocks from the scene of the shooting. At the time of the attempted robbery, Gore was wearing a red shirt, which the defendant interpreted to mean that Gore was associated with the "Tre Bloods" gang. Further, Gore was aware that the defendant was a member of "The Ville" gang. Gore identified the perpetrator as the defendant from a photographic array at the police station and again at trial.

Almost two years later, on June 21, 2005, the police spoke with Timothy Phelmetta regarding the shooting. Phelmetta informed the police that on the evening of August 3, 2003, he heard a gunshot and saw a heavyset

male, possibly wearing a white jersey, on a bicycle riding away from the scene. Phelmetta recognized the biker as the defendant, with whom he had attended high school. He also identified the defendant from a photographic array and again at trial.

On October 23, 2006, the state charged the defendant with the murder of the victim in violation of § 53a-54a and carrying a pistol or revolver without a permit in violation of § 29-35. On November 20, 2006, the defendant was found guilty on both charges. On February 8, 2007, the court committed the defendant to the custody of the commissioner of correction for a total effective term of fifty years. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the evidence was insufficient to identify him as the shooter because (1) there was no forensic evidence from which to determine the shooter's identity and (2) many of the lay witnesses lacked credibility because they faced serious criminal charges. We are not persuaded.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to

determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . .

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . We do not sit as a [thirteenth] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . Furthermore, "[i]n our review of the evidence to determine its sufficiency, we do not look at the evidence to see whether it supports the defendant's innocence. . . . Instead, our focus is whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Fleming*, 111 Conn. App. 337, 342–43, 958 A.2d 1271 (2008), cert. denied, 290 Conn. 903, 962 A.2d 794 (2009). With these principles in mind, we now turn to the defendant's claims.

The defendant first argues that there was a lack of forensic evidence from which to determine the shooter's identity. "Since direct and circumstantial evidence have equal probative value, however, the absence of forensic or scientific evidence does not make the evidence insufficient per se." *State* v. *Henning*, 220 Conn. 417, 421, 599 A.2d 1065 (1991). Further, "in the absence of forensic evidence, we cannot usurp the role of the

jury and discredit the testimony of the state's witnesses as a matter of law." *State* v. *Jones*, 234 Conn. 324, 333–34, 662 A.2d 1199 (1995). In this case, sufficient nonforensic evidence was presented to the jury to prove the defendant's identity as the shooter on the basis of, inter alia, (1) Booker's testimony that she saw someone fitting the defendant's description riding a bike away from the scene of the incident, (2) Taft's testimony that the defendant admitted to her that he had shot the victim and (3) Phelmetta's testimony that he saw the defendant riding his bike away from the scene of the shooting shortly after Phelmetta heard gunshots. Additionally, Gore's statement placed the defendant in the area of the shooting, on a bike with a gun, at about the time that the shooting had occurred. Taft, Phelmetta and Gore also were able positively to identify the defendant in court and from a photographic array. "Connecticut case law has previously recognized in-court identifications and identifications from fairly presented photographic arrays as sufficient evidence by themselves to allow the trier of fact to conclude that it was the defendant who committed the crimes charged." *State* v. *Morgan*, 274 Conn. 790, 802, 877 A.2d 739 (2005).

The defendant next contends that with the exception of Booker, all the lay witnesses lacked credibility because they had pending legal charges. Our Supreme Court has found that it is the jury's responsibility to determine the weight to be given to witness identifications. See id. "Furthermore, it is the jury's role as the sole trier of the facts to weigh the conflicting evidence and to determine the credibility of witnesses. . . . It is the right and duty of the jury to determine whether to accept or to reject the testimony of a witness . . . and what weight, if any, to lend to the testimony of a witness and the evidence presented at trial." (Citations omitted; internal quotation marks omitted.) Id. Here, witness credibility was certainly fodder for the jury's

consideration. More importantly, it is not within this court's province to revisit the jury's credibility determinations. See *State* v. *Northrop*, 92 Conn. App. 525, 531, 885 A.2d 1270 (2005), cert. denied, 277 Conn. 905, 894 A.2d 988 (2006).

On the basis of our review of the foregoing testimony and our thorough review of the record, we conclude that the state presented sufficient evidence from which the jury reasonably could have found that it was the defendant who had shot the victim.

## II

The defendant next claims that the court abused its discretion by refusing to charge as requested, and, as a result, the jury was instructed inadequately. We do not agree.

The following additional facts are relevant to the defendant's claim. On November 20, 2006, the defendant filed a request to charge regarding evidence of his prior misconduct. With respect to the issue of prior misconduct, the defendant requested that the judge charge the jury as follows:

"The [s]tate offered evidence through Marvin Gore that the [d]efendant attempted to rob him on Winthrop Avenue in New Haven sometime between the hours of 7:00 p.m. and 8:00 p.m. on August 3, 2003. Said evidence was admitted solely to establish that the [d]efendant might have been in the area of the homicide on August 3, 2003 and that he was in possession of a bicycle and a gun at that time.

"*It should be remembered in considering this evidence that Marvin Gore indicated that the [d]efendant was wearing a black shirt at the time of the alleged attempted robbery which contrasts with other descriptions of the homicide perpetrator who was described as wearing a white shirt.*

"The evidence offered by the [s]tate of this prior act of misconduct by the [d]efendant was not admitted to prove the bad character of the [d]efendant or his propensity to commit criminal acts. This evidence was admitted solely to establish the identity of the person who committed the crime and the [d]efendant's possession of the means that might have been useful or necessary for the commission of the crimes charged.

"You may consider such evidence if you believe it and further that it logically, rationally and conclusively supports the issues for which it is being offered by the [s]tate, but only as it bears on the issues of the existence of the identity of the person who committed the crime and the [d]efendant's knowledge or possession of the means that might have been useful or necessary for the commission of the crimes charged.

"On the other hand, if you do not believe such evidence, or even if you do, if you find that it does not logically, rationally and conclusively support the issues for which it is being offered by the [s]tate, namely the identity of the person who committed the crime, and the [d]efendant's knowledge or possession of the means that might have been useful or necessary for the commission of the crimes charged then you may not consider that testimony for any purpose.

*"You may not consider evidence of prior misconduct even for the limited purpose of attempting to prove the crimes charged in the information because it may predispose your mind uncritically to believe that the [d]efendant may be guilty of the offenses charged merely because of the alleged prior misconduct. For this reason, you may consider this evidence only on the issues of the identity of the person who committed the crime and the defendant's knowledge or possession of the means that might have been useful or necessary*

*for the commission of the crimes charged and for no other purpose.*" (Emphasis added.)

At the charging conference, the court notified the defendant that it would give his request to charge but would omit the second and sixth paragraphs of the charge. The court's instructions to the jury were a verbatim recitation of the defendant's request to charge, except for the omission of paragraphs two and six. In sum, the court substantially complied with the defendant's requested charge to the jury on the use of prior misconduct evidence, with the exception that the court did not comment on the discrepancy in the evidence regarding the color of the shirt.

"The primary purpose of the charge to the jury is to assist [it] in applying the law correctly to the facts which [it] find[s] to be established. . . . [A] charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Although [a] request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given . . . [a] refusal to charge in the exact words of a request . . . will not constitute error if the requested charge is given in substance. . . . Thus, when the substance of the requested instructions is fairly and substantially included in the trial court's jury charge, the trial court may properly refuse to give such instructions." (Internal quotation marks omitted.) *State v. Sulser*, 109 Conn. App. 852, 878, 953 A.2d 919, cert. denied, 289 Conn. 939, 959 A.2d 1006 (2008).

As noted, the only portions of the defendant's requested charge that were not given by the court were comments on the evidence regarding the color of the

perpetrator's shirt. Within the charge to the jury, "[t]he extent to which a court should comment on the evidence is largely a matter within its sound discretion. . . . However, in some cases, where the issues are complicated, peculiar, or capable of differing conclusions, comment by the court is necessary." (Citation omitted; internal quotation marks omitted.) *Bushy* v. *Forster*, 243 Conn. 596, 599, 706 A.2d 8, aff'd after remand, 50 Conn. App. 233, 718 A.2d 968 (1998). In the case at hand, the issues were straightforward and uncomplicated. The parties' closing arguments addressed the discrepancies between the witnesses' descriptions of the defendant's shirt, and the court's charge was sufficient to guide the jurors in evaluating all the evidence. We conclude, therefore, that the refusal by the court to include, in its charge, the statements requested by the defendant did not constitute an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.