## SOVEREIGN BANK *v.* JAMES LICATA ET AL.
### (AC 28286)

Flynn, C. J., and Bishop and Gruendel, Js.

Argued January 15—officially released August 18, 2009

*Kenneth A. Votre*, for the appellant (substitute plaintiff Seven Oaks Partners, LP).

*Opinion*

BISHOP, J. The substitute plaintiff, Seven Oaks Partners, LP (Seven Oaks), appeals from the judgment of the trial court, rendered after a jury verdict, in favor of the defendant Cynthia Licata[1] on her counterclaim alleging a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et

---

[1] James Licata, Susan Braun, Edward Stanley and First Connecticut Consulting Group, Inc., were also named as defendants. Because Seven Oaks and Cynthia Licata are the only remaining parties in this action, we refer in this opinion to Cynthia Licata as the defendant.

seq.,[2] and negligent misrepresentation.[3] Seven Oaks claims that the court improperly failed to grant its motions to set aside the verdict and for judgment notwithstanding the verdict with respect to the counts of the defendant's counterclaim alleging a violation of CUTPA and negligent misrepresentation. Additionally, Seven Oaks claims that the court incorrectly failed to order a remittitur of the jury's damage award on the misrepresentation claim, improperly failed to sustain its objection to the defendant's claim for a jury trial on her counterclaim and improperly permitted the defendant's expert to testify with respect to damages.[4] We reverse in part and affirm in part the judgment of the trial court.

The following procedural and factual history sets the context for our discussion of the issues on appeal. The defendant owned a parcel of property located at 23 Meeting House Road (parcel A) in Greenwich, and her husband, James Licata,[5] owned a vacant lot across the street (parcel B).[6] On March 16, 2001, James Licata executed a promissory note in conjunction with entering into a loan agreement to borrow $2.5 million from

[2] General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

[3] The defendant cross appealed from the decision of the court setting aside the verdict of the jury on the count of the counterclaim alleging breach of contract by Seven Oaks. The defendant, however, failed to file a brief on appeal either in response to Seven Oaks' appeal or in support of her counterclaim. Therefore, the court considers, as abandoned, the issue raised in the defendant's cross appeal. Additionally, the court has considered the issues raised on appeal as briefed and argued by Seven Oaks.

[4] Seven Oaks also claims that the court improperly failed to charge the jury as to the applicability of the statute of frauds to matters concerning real estate, and failed to charge the jury as to parol evidence. To the extent that these claims relate either to the foreclosure action or to the count of the defendant's counterclaim alleging breach of contract, there is no need to analyze them because Seven Oaks has prevailed in both respects.

[5] James Licata and the defendant have since separated.

[6] James Licata later conveyed his parcel to the defendant on June 19, 2001, and she became record owner of both parcels.

the plaintiff, Sovereign Bank. The loan was secured by an open-ended mortgage deed and promissory note, by which the defendant and James Licata granted Sovereign Bank a first mortgage on the two parcels of land. As an additional assurance, First Connecticut Consulting Group, Inc. (First Connecticut), guaranteed payment of the loan by executing and delivering to Sovereign Bank a guaranty promising the due and punctual payment of the loan. James Licata failed to make timely monthly payments on the loan and eventually defaulted. In response, Sovereign Bank demanded payment in full of the sum due under the loan and, on March 19, 2002, commenced proceedings seeking a judgment of foreclosure and possession of both parcels, a deficiency judgment against James Licata and money damages against First Connecticut for its failure to pay the amount due under the guaranty.

On May 6, 2002, the defendant filed an answer and special defense, alleging that the open-ended mortgage and promissory note were invalid and not enforceable because she did not willingly and knowingly execute them, and that their execution was the result of Sovereign Bank's breach of the implied covenant of good faith and fair dealing.

On June 27, 2003, Sovereign Bank moved for summary judgment against the defendant, alleging that (1) there were no genuine issues of material fact concerning the allegations raised in its complaint, (2) the conclusions contained in the defendant's special defense were legally insufficient because they were not supported by factual allegations and (3) the allegation that Sovereign Bank violated the implied covenant of good faith and fair dealing was legally insufficient. The court granted Sovereign Bank's summary judgment motion as to liability on the note and mortgage as to parcel A.

On July 24, 2003, Sovereign Bank assigned the note, mortgage, guaranty and all related loan documents to

Seven Oaks. James Licata had requested that Seven Oaks purchase the mortgage and note to avoid foreclosure and the attendant loss of the properties. That same day, the defendant and Seven Oaks entered into a forbearance agreement, which was memorialized in a letter of understanding. The agreement, which was signed by both parties, provided that the defendant would place a sum equal to twelve months of interest payments and closing costs into an escrow account and from that account she would pay interest on the outstanding principal of the mortgage to Seven Oaks. The defendant further agreed to pay the mortgage in full on or before July 24, 2004. For its part, Seven Oaks agreed to charge interest to the defendant at a rate equal to the default interest rate then being charged by Sovereign Bank or 6 percent, whichever was greater. The agreement further stated that by June 15, 2004, the defendant would make arrangements either to sell or refinance the property, and, if she failed to do so, Seven Oaks could foreclose immediately and the defendant would waive all objections, impediments or delays to foreclosure. On August 8, 2003, the defendant signed a letter of understanding indicating that she had deposited the sum of $185,773.67 into an escrow account for the purposes of funding the closing costs and it being drawn on for monthly interest payments in servicing the mortgage as contemplated by the July 24 agreement.

Notwithstanding the terms of the parties' agreement, the defendant failed to pay the mortgage in full by July 24, 2004. Accordingly, on August 30, 2004, Seven Oaks moved to be substituted as the plaintiff in this action in place of Sovereign Bank, and, once this was accomplished, it then continued the foreclosure action.

On September 29, 2005, the defendant filed revised, amended special defenses and a counterclaim against Seven Oaks. The first special defense alleged that she and Seven Oaks had entered into a written and oral

forbearance agreement in which Seven Oaks had agreed to forbear a claim for default and to withdraw the foreclosure action, and, in consideration, the defendant agreed to place $187,000 into an escrow account from which she would make monthly interest payments of $13,400. The defendant further alleged that even though she had fulfilled her obligations under the agreement, Seven Oaks had not withdrawn the foreclosure action. The second special defense alleged that Raymond Chodos was the managing partner of Seven Oaks and that he had solicited the defendant to become her paid financial adviser. It alleged that Chodos had gained the defendant's confidence and that she had come to rely on his advice. It further alleged that Chodos had advised the defendant not to pay off the loan under foreclosure as contemplated in the forbearance agreement and that he, instead, persuaded her to sign a sales contract to sell her home for a price insufficient to pay the encumbrances on her property. The defendant claimed that as a result of the advice she had received from Chodos and her reliance on it, she was unable to sell her home, to pay encumbrances, to clear an environmental lien and to refinance her mortgage as contemplated in the forbearance agreement. The defendant further claimed that Seven Oaks violated General Statutes §§ 36a-498a et seq. and 36a-749b[7] because its amended promissory note resulted in a high cost loan that exceeded 50 percent of the defendant's income. As a consequence of this behavior, the defendant claimed that Seven Oaks should be estopped from foreclosing on her property and from seeking money damages from her.

The defendant's counterclaim was in three counts. The first count repeated the factual allegations set forth in her special defenses and alleged that, as a consequence of Seven Oaks' conduct, she paid more interest

[7] The General Statutes do not contain a § 36a-749b. It appears that the defendant meant to cite General Statutes § 36a-746b.

than she should have; was unable to sell or refinance her property; incurred attorney's fees and costs, moving expenses and expenses for the rental of another property; and became nervous and upset with attendant loss of sleep. She alleged that the behavior by Seven Oaks constituted a violation of CUTPA. The second count of the counterclaim sounded in tort. It repeated the factual allegations of the special defenses and claimed that Seven Oaks made material misrepresentations to the defendant's detriment and damage. The third count of the counterclaim sounded in contract. It also repeated the factual allegations of the special defenses and alleged that Seven Oaks breached its duty of good faith and fair dealing with respect to its agreements with the defendant.

On February 15, 2006, Seven Oaks filed a reply and answer to the defendant's special defenses and counterclaim, denying the defendant's allegations. On September 13, 2006, a trial to the jury on the counterclaim commenced, and on September, 21, 2006, the court submitted the issues to the jury. In addition to verdict forms, the jury was given interrogatories to answer. Of relevance to our discussion are the following interrogatories and the jury's responses: "Did . . . Seven Oaks, orally agree to [forbear] a claim for default and to withdraw Sovereign Bank's foreclosure?" The jury answered, "Yes." "During the year interest payments were made from the escrow, did Seven Oaks, by making material misrepresentations, mislead [the defendant] not to seek a loan to pay off the mortgage under foreclosure, but persuaded her to sell her home?" The jury responded, "Yes." "Was the conduct of Mr. Chodos, in dealing with [the defendant], outrageous and a breach of good faith and fair dealing?" The jury answered, "Yes." Additionally, the verdict form as to the counterclaim required the jury to respond to each count as to liability but permitted the jurors to determine damages

in the aggregate for the second and third counts of the counterclaim if the jury found liability under either or both of those counts.[8] In sum, the jury found in favor of the defendant on all three counts of her counterclaim and as to the second or third count, the jury awarded the defendant the sum of $500,000 as damages. The court accepted the verdict on September 27, 2006.

On October 5, 2006, judgment of strict foreclosure was entered against the defendant. The court also rendered judgment in favor of the defendant on the counterclaim and awarded CUTPA damages, under count one of the counterclaim, in the amount of $300,000. Subsequently, Seven Oaks filed motions to reconsider, for remittitur, to set aside the verdict and for judgment notwithstanding the verdict. The court denied the motions to reconsider and for remittitur. The court also denied the motions to set aside the verdict and for judgment notwithstanding the verdict as to the first and second counts of the counterclaim, but granted them as to the breach of contract claim set forth in the third count.

On November 15, 2006, the court awarded Seven Oaks $63,058.42 in counsel fees on the foreclosure claim and awarded the defendant $90,130.75 in counsel fees on

---

[8] The verdict form and jury responses were as follows: "The jury finds the issues given to it as follows . . . As to Counterclaim #1 (CUTPA) . . . [f]or [the] defendant . . . (who is [the] plaintiff on the counterclaim) . . .

"As to Counterclaim #2 (misrepresentation) . . . [f]or [the] defendant . . . (who is [the] plaintiff on the counterclaim) . . .

"As to Counterclaim #3 (breach of contract) . . . [f]or [the] defendant . . . (who is [the] plaintiff on the counterclaim) . . . ."

The verdict form continued: "If [the defendant] prevails on Counterclaims 2 and/or 3, set forth the damages attributable to Counterclaim 2 and/or 3 in a single figure." Next to this direction, the jury wrote "$500,000." We note that on appeal, although Seven Oaks claims that the jury could not have made an award under any count of the counterclaim, it makes no claim that the jury's award of damages under the second and, or, third counts of the counterclaim could not have been awarded entirely under the second count.

the CUTPA claim. This appeal followed. Additional facts will be set forth as necessary.

I

Seven Oaks first claims that the court improperly failed to set aside the verdict and to grant its motion for judgment notwithstanding the verdict with respect to count one of the defendant's counterclaim. Specifically, Seven Oaks argues that the evidence unequivocally established that the subject transaction was incidental to its primary business and thus fell outside the purview of CUTPA.[9] We agree.

We begin with a brief discussion of the appropriate standard of review. "The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence.. . . . [T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . A court is empowered to set aside a jury verdict when, in the court's opinion, the verdict is contrary to the law or unsupported by the evidence. . . . Although the trial court's decision in this regard is entitled to great weight . . . where it is clear that the jury could not reasonably and logically have reached the conclusion [it] did, the court's refusal to set aside

[9] Seven Oaks also claims that (1) the court improperly submitted the CUTPA claim to the jury because its applicability is a matter of law, (2) the court improperly awarded CUTPA damages and fees to the defendant because the evidence did not warrant it and (3) the defendant's CUTPA claim was barred by the statute of frauds. Because we reverse the judgment on the basis of the inapplicability of CUTPA to the facts, we need not reach these issues.

the verdict rendered will not be sustained." (Citation omitted; internal quotation marks omitted.) *Auster* v. *Norwalk United Methodist Church*, 94 Conn. App. 617, 620, 894 A.2d 329 (2006), aff'd, 286 Conn. 152, 943 A.2d 391 (2008).

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). To enforce this prohibition, CUTPA provides a private cause of action to "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice . . . ." General Statutes § 42-110g (a).

"The purpose of CUTPA is to protect the public from unfair practices in the conduct of any trade or commerce . . . ." *Krawiec* v. *Blake Manor Development Corp.*, 26 Conn. App. 601, 607, 602 A.2d 1062 (1992). In determining whether certain acts constitute a violation of CUTPA, our Supreme Court has adopted the criteria set out in the Federal Trade Commission's "cigarette rule": "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen]." (Internal quotation marks omitted.) *Journal Publishing Co.* v. *Hartford Courant Co.*, 261 Conn. 673, 695, 804 A.2d 823 (2002).

"To state a claim under CUTPA, the plaintiff must allege that the actions of the defendant were performed

in the conduct of trade or commerce." (Internal quotation marks omitted.) *Muniz* v. *Kravis,* 59 Conn. App. 704, 711, 757 A.2d 1207 (2000); see also General Statutes § 42-110b. Moreover, "a CUTPA violation may not be alleged for activities that are incidental to an entity's primary trade or commerce." *McCann Real Equities Series XXII, LLC* v. *David McDermott Chevrolet, Inc.,* 93 Conn. App. 486, 523, 890 A.2d 140 (concluding that CUTPA claim could not lie because transaction at issue, sale of real property, was incidental to defendants' car dealership business), cert. denied, 277 Conn. 928, 895 A.2d 798 (2006); see also *Cornerstone Realty, Inc.* v. *Dresser Rand Co.,* 993 F. Sup. 107, 113 (D. Conn. 1998) ("a CUTPA violation may not arise out of conduct that is merely incidental to the performance of one's trade or commerce"). Thus, we must determine whether the record supports a conclusion that Seven Oaks' activities, as alleged in the defendant's counterclaim, fell within the scope of its primary business.

Our careful review of the record reveals uncontroverted testimony that since 2000, Seven Oaks has been engaged in the business of real estate acquisition, including the purchase, sale and renovation of real property. The subject transaction involved the Seven Oaks' acquisition of the defendant's mortgage loan and note from Sovereign Bank, the forbearance agreement that Seven Oaks entered into with the defendant and conduct between the parties during the period of forbearance. There was no evidence presented at trial that Seven Oaks ever had, prior to the transaction or thereafter, engaged in the mortgage business, nor did the defendant allege as much. The defendant's allegations solely related to an ancillary transaction that was incidental to the Seven Oaks' primary real estate business and thus fell outside the CUTPA penumbra. We conclude, therefore, that Seven Oaks could not be made subject to CUTPA sanctions for its conduct as alleged

by the defendant. See *McCann Real Equities Series XXII, LLC* v. *David McDermott Chevrolet, Inc.*, supra, 93 Conn. App. 523. Accordingly, the judgment of the court with respect to the CUTPA count must be reversed, and its awards made pursuant to CUTPA must be vacated.

## II

Seven Oaks next claims that the court improperly denied its motion for a judgment notwithstanding the verdict or, in the alternative, its motion to set aside the verdict, regarding the defendant's negligent misrepresentation claim because (1) the claim relies solely on an alleged oral forbearance agreement that is void as contrary to the statute of frauds, General Statutes § 52-550 (a) (4); and (2) even if the claim was not barred by the statute of frauds, the evidence was insufficient to support an award based on a claim of misrepresentation. We disagree.

"[O]ur review of a trial court's refusal to direct a verdict or to render a judgment notwithstanding the verdict takes place within carefully defined parameters. We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial . . . giving particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion." (Internal quotation marks omitted.) *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 50, 873 A.2d 929 (2005).

## A

We first review Seven Oaks' argument that the defendant cannot maintain her misrepresentation claim

because its nucleus is an oral forbearance agreement that is barred by the statute of frauds. In sum, Seven Oaks contends that the negligent misrepresentation action is barred because it relies on an oral forbearance agreement that pertains to an interest in real property, which is barred by § 52-550 (a) (4), requiring such agreements to be in writing.

Section 52-550 (a) provides in relevant part: "No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property . . . ." The provision "requires that every agreement or memorandum of an agreement for the sale of real property or any interest in or concerning real property be in writing and signed by the party to be charged in order for a civil action to be maintained against that party." (Internal quotation marks omitted.) *L & R Realty* v. *Connecticut National Bank*, 53 Conn. App. 524, 541, 732 A.2d 181, cert. denied, 250 Conn. 901, 734 A.2d 984 (1999). "The primary purpose of the statute of frauds is to provide reliable evidence of the existence and the terms of the contract . . . ." (Internal quotation marks omitted.) *Electrical Wholesalers, Inc.* v. *M.J.B. Corp.*, 99 Conn. App. 294, 302, 912 A.2d 1117 (2007).

We begin our analysis of this difficult question by noting that a claim of negligent misrepresentation sounds in tort. See 3 Restatement (Second), Torts § 552 (1977); *Kramer* v. *Petisi*, 285 Conn. 674, 684, 940 A.2d 800 (2008). In the case at hand, the defendant has alleged both an oral forbearance agreement as well as conduct by Seven Oaks during the period of forbearance that, she claims, constituted misrepresentations of fact on which she relied to her detriment. If the claim were based solely on the alleged failure of Seven Oaks to

live up to the terms of an oral forbearance agreement, it would be barred by the statute of frauds. Although neither this court nor our Supreme Court appears to have addressed the question previously, well reasoned Superior Court decisions have held that an oral mortgage forbearance agreement is made unenforceable by the statute of frauds. Thus, in *Glastonbury Bank & Trust Co.* v. *Corbett Construction Co.*, Superior Court, judicial district of New London, Docket No. 521355 (October 15, 1992) (7 Conn. L. Rptr. 519, 520), the court stated: "[T]he alleged oral agreement not to foreclose was between the mortgagor and the mortgagee. As between these parties, the mortgage represented an interest in land. The agreement not to foreclose was therefore an agreement to surrender an interest in land. As such, the agreement was within the [s]tatute of [f]rauds." (Internal quotation marks omitted.); see also *Wells Fargo Bank Minnesota, N.A.* v. *Dougherty*, Superior Court, judicial district of Litchfield, Docket No. CV-03-089747-S (August 22, 2003) (35 Conn. L. Rptr. 399) (oral forbearance agreement violative of statute of frauds because it had not been reduced to writing).

In the case at hand, however, the second count of the defendant's counterclaim rests not on an oral agreement but, rather, on a claim that Seven Oaks made misrepresentations to the defendant during the period of forbearance on which she relied to her detriment. The question, therefore, is whether the statute of frauds bars recovery based on a claim of misrepresentation when the alleged misrepresentations relate, in some way, to an unenforceable oral agreement. While not directly addressing this question, our Supreme Court has suggested, in dicta, that such an action may lie. In *Glazer*, our Supreme Court suggested, in dicta, that "there is some authority for the proposition that a tort claim based on a contract may be asserted when the contract is otherwise valid but unenforceable for failure

to comply with the statute of frauds . . . ." *Glazer* v. *Dress Barn, Inc.*, supra, 274 Conn. 80. That appears to be this case.

When the Superior Court has considered this issue, the outcomes have been mixed.[10] In *Foster Road Associates* v. *NJM Realty Ltd. Partnership*, Superior Court, judicial district of Hartford, Docket No. CV-94-533485-S (September 13, 1996) (17 Conn. L. Rptr. 616), the defendant orally agreed to sell property to whoever submitted the highest bid by 5 p.m., but subsequently sold the property to a bidder whose submission was received after the deadline. The court found that the action was for a breach of contract despite the plaintiff's claim that there was a misrepresentation. The court noted that "[t]he plaintiff cannot avoid the bar of the [s]tatute of [f]rauds by labeling the cause of action as one to recover damages for fraud where, as here, proof of a contract, void under the [s]tatute of [f]rauds, is essential to maintain the action." (Internal quotation marks omitted.) Id., 618. The court did note, however, that "[o]ne can envision a set of facts in which a plaintiff might state a valid cause of action for negligent misrepresentation where it took actions in reliance on a seller's representations." Id.

In *Mars Electric, LLC* v. *Wooster Par, LLC*, Superior Court, judicial district of Danbury, Docket No. CV-04-4000373-S (January 28, 2005) (38 Conn. L. Rptr. 545),

[10] We further note that there is a split of authority among the states that have considered whether the statute of frauds bars tort actions that stem from unenforceable oral agreements. See *Mika* v. *Central Bank of Kansas City*, 112 S.W.3d 82, 91–92 (Mo. App. 2003) (noting that statute of frauds is defense to action to enforce contract and because plaintiff's claim sounded in tort it was not barred by statute of frauds); *Phil-Co Feeds, Inc.* v. *First National Bank*, 238 Mont. 414, 421–22, 777 P.2d 1306 (1989) (cause of action not barred); *Frame* v. *Boatmen's Bank of Concord Village*, 782 S.W.2d 117, 122–23 (1989) (holding that plaintiff's claim for negligent misrepresentation sounded in tort, not contract and therefore statute of frauds did not apply to bar claim), on appeal after remand, 824 S.W.2d 491 (Mo. App. 1991); *Daley* v. *Blood*, 121 N.H. 256, 257–58, 428 A.2d 900 (1981) (statute of frauds barred negligent misrepresentation action based on promise within statute).

the plaintiff signed a contract prepared by the defendant, for the purchase of the defendant's land. The defendant orally agreed to the terms of the contract but failed to sign the contract and later sold the property to a third party. The court granted the defendant's motion to strike the plaintiff's misrepresentation counts because the tort counts were "founded on the allegation that [the defendant] breached an oral agreement for the sale of real property." Id., 547. The court reasoned that the statute of frauds precluded tort recovery because the statute "is not limited to actions for breach of contract, but rather provides that *no civil action* shall be maintained upon an oral agreement to sell real estate." (Emphasis added; internal quotation marks omitted.) Id.

Conversely, some Superior Court decisions have permitted tort claims to be raised where the underlying contract was barred by the statute of frauds. In *Terracino* v. *Platano*, Superior Court, judicial district of Danbury, Docket No. CV-01-0341944-S (September 25, 2001) (30 Conn. L. Rptr. 424), the court considered whether a plaintiff may recover in a tort action for fraud when the statute of frauds denies the plaintiff a remedy under contract law. In that case, the parties' agreement was "for the sale of real property that falls squarely within category (a) (4) of General Statutes § 52-550." *Terracino* v. *Platano*, supra, 30 Conn. L. Rptr. 424–25. The court found, however, that "[s]trict adherence to the language of § 52-550 (a) (4), which provides that no civil action may be maintained upon an agreement for the sale of property in the absence of a writing, would foreclose any remedy to [the plaintiff], even if the defendants perpetrated a fraud. . . . It is a fundamental tenet of jurisprudence in Connecticut, however, that the statute of frauds cannot itself be allowed to serve as an engine of fraud. . . . [S]everal authorities illuminate the issue. First is *Reed* v. *Copeland*, [50 Conn. 472,

491 (1883)], in which the court stated that '[i]t is the accepted construction of the statute [of frauds] in courts of equity that, inasmuch as its design was to furnish protection against fraud, a party cannot take shelter behind its provisions, and thereby perpetrate a fraud on the other party, either actual or constructive. . . . Another is *Wittstein* v. *Keenan,* [17 Conn. Sup. 163, 165 (1951)], in which the court held that the statute of frauds was not a bar to an action to recover the plaintiff's deposit, where the defendant fraudulently misrepresented an unwritten, but material, element of their agreement. . . . Indeed, the authors of Connecticut Law of Torts cite *Wittstein* for the following proposition: 'Occasions may arise where the contract remedy will not be enforceable due to the Statute of Frauds whereas the tort remedy of fraud and deceit might be applicable.' D. Wright, J. FitzGerald & W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 134, p. 389." *Terracino* v. *Platano,* supra, 30 Conn. L. Rptr. 425; see also *Wolf* v. *Giosa,* Superior Court, judicial district of Hartford, Docket No. CV-05-5002481-S (October 6, 2006) (42 Conn. L. Rptr. 150, 152) ("there may be occasions where the [s]tatute of [f]rauds does not foreclose a plaintiff from seeking remedy for tortious conduct such as fraud and misrepresentation"). Additionally, in *Ohio Savings Bank* v. *Wage,* Superior Court, judicial district of Fairfield, Docket No. CV-04-4002598-S (April 4, 2007), the court found that "the statute of frauds does not preclude the court's consideration of whether the defendants are entitled to the equitable relief that they seek to obtain. The facts asserted by the defendants in support of their special defense of negligent misrepresentation, including the facts concerning the plaintiff's acts and omissions relating to the claimed misrepresentation, raise questions of fact to be equitably considered by the trier of fact." See also *GF Mortgage Corp.* v. *Gilmore,* Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-95-0144488-S (November 6,

1995) (motion to strike denied, even though oral agreement relating to interest in real property barred by statute of frauds, because count alleged negligent misrepresentation); *Connecticut National Bank* v. *Montanari*, Superior Court, judicial district of Hartford-New Britain, Docket No. CV-92-0517808-S (January 26, 1994) (although plaintiff may have had valid defense to certain counts of counterclaim based on statute of frauds, motion to strike denied because those counts stated causes of action for negligent misrepresentation).

Comment (c) to § 530 of the Restatement (Second) of Torts (1977) is in keeping with the tenets articulated in *Foster Road Associates, Terracino* and *Ohio Savings Bank*. The Restatement notes that the person misled by the representation has a cause of action in tort as an alternative to a contract action and that a misrepresentation of one's intention is actionable even "when the agreement is oral and made unenforceable by the statute of frauds . . . ." 3 Restatement (Second), Torts § 530, comment (c) (1977). Additionally, Professor Samuel Williston sets forth in his learned treatise that "[u]nder most formulations of the Statute of Frauds, it has frequently been held that only the enforceability, not the validity, of a bargain depends upon the satisfaction of the Statute . . . ." 10 S. Williston, Contracts (4th Ed. Lord 1999) § 27:3, pp. 17–18. We find soundness in the reasoning of those Superior Court decisions that have allowed an action based on misrepresentation even where the alleged tortious conduct relates, in some measure, to an unenforceable oral contract, and we ally ourselves with Professor Williston and the applicable section of the Restatement of Torts in this regard. Guided by the foregoing, we conclude that the policies of the statute of frauds will not be subverted by affording plaintiffs who can prove a claim of negligent misrepresentation the opportunity to do so. A negligent

misrepresentation action does not seek to *enforce* the underlying contract; rather, it seeks damages for reliance on misrepresentations that may have been made in relation to that contract. This critical distinction sets the tort action apart from a contract action and makes the claim worthy of independent review. We conclude, therefore, that because the defendant's claim for negligent misrepresentation sounds in tort and not in contract, the statute of frauds does not bar such a claim. To find otherwise would unjustly extend the reach of the statute of frauds.

### B

We now turn to a review of the Seven Oaks' claim that the evidence was insufficient for the jury to have found in favor of the defendant on her negligent misrepresentation counterclaim.

"The governing principles [of negligent misrepresentation] are set forth in . . . § 552 of the Restatement (Second) of Torts (1977): One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Internal quotation marks omitted.) *Kramer* v. *Petisi*, supra, 285 Conn. 681.

"Traditionally, an action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result. . . . Whether evidence supports a claim of . . . negligent misrepresentation is a question of fact. . . . As such we will review the findings of the court as to

negligent misrepresentation and reverse [a] judgment as to [such] claim only if the findings are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Centimark Corp.* v. *Village Manor Associates Ltd. Partnership*, 113 Conn. App. 509, 518, 967 A.2d 550, cert. denied, 292 Conn. 907, 973 A.2d 103 (2009).

"In applying the clearly erroneous standard of review, [a]ppellate courts do not examine the record to determine whether the trier of fact could have reached a different conclusion. Instead, we examine the trial court's conclusion in order to determine whether it was legally correct and factually supported. . . . This distinction accords with our duty as an appellate tribunal to review, and not to retry, the proceedings of the trial court." (Citation omitted; internal quotation marks omitted.) *First National Bank of Litchfield* v. *Miller*, 285 Conn. 294, 302–303, 939 A.2d 572 (2008).

In the present case, the defendant's negligent misrepresentation claim alleged that (1) Seven Oaks orally had agreed to withdraw the foreclosure action in consideration of the defendant's placing $187,000 into escrow for monthly interest payments on the mortgage but failed to do so and (2) during the forbearance period, Seven Oaks made numerous misrepresentations that discouraged her from paying off her mortgage and, instead, convinced her to sign a sales contract to sell her home for a price that would not cover the expense of paying the encumbrances on her property.

In support of these allegations, the defendant testified that Chodos, who in addition to managing Seven Oaks was serving as her financial adviser, said that he would withdraw the foreclosure action and help her refinance her home. She also testified that Chodos advised her to obtain a second mortgage from Seven Oaks on the property for $270,000. The defendant further alleged that Chodos subsequently advised her that she could

not refinance the house due to her poor credit and that Seven Oaks would have to proceed with the foreclosure action. The defendant noted that at that time, she owned numerous properties outright and twelve cars and had various investments, belying Chodos' claim that she would be unable to refinance. The defendant claimed that as a result of the advice and actions of Seven Oaks during the forbearance period, she was unable to sell her home, cure an environmental lien on her property and refinance to pay the $270,000 mortgage, which was an expense that she should not have incurred.

The jury found, as evidenced in its response to the interrogatories, that Seven Oaks orally agreed to withdraw the foreclosure action and had made material misrepresentations during the forbearance period that persuaded the defendant to sell her home instead of paying off the mortgage. In assessing the evidence, we note that "it is the jury's role as the sole trier of the facts to weigh the conflicting evidence and to determine the credibility of witnesses. . . . It is the right and duty of the jury to determine whether to accept or to reject the testimony of a witness . . . and what weight, if any, to lend to the testimony of a witness and the evidence presented at trial." (Internal quotation marks omitted.) *State* v. *Moye*, 112 Conn. App. 605, 610, 963 A.2d 690, cert. denied, 291 Conn. 906, 967 A.2d 1221 (2009). Here, the jury's finding of negligent misrepresentation was supported by the defendant's testimony that Seven Oaks had made factual misrepresentations that it would withdraw the foreclosure action and that she would not be able to refinance her home to pay off her mortgage, and that she relied on those misrepresentations to her financial detriment. In assessing this testimony, the jury was free to consider the defendant's credibility. More importantly, it is not within this court's province to revisit the jury's credibility determinations. See *State* v. *Northrop*, 92 Conn. App. 525, 531, 885 A.2d 1270

(2005), cert. denied, 277 Conn. 905, 894 A.2d 988 (2006). We conclude, therefore, that the court properly denied Seven Oaks' motions for judgment notwithstanding the verdict and to set aside the verdict as to the defendant's negligent misrepresentation claim.

## III

Seven Oaks next claims that the court incorrectly failed to order a remittitur of the jury's damage award on the negligent misrepresentation claim. It contends that the jury's award of $500,000 is excessive. We do not agree.

"The decision whether to reduce a jury verdict because it is excessive as a matter of law rests solely within the discretion of the trial court, pursuant to General Statutes § 52-216a."[11] *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 167, 681 A.2d 293 (1996). When ruling on a defendant's motion for a remittitur, the trial court must view the evidence in the light most favorable to the plaintiff in determining whether the verdict returned was reasonably supported thereby. See *Oakes* v. *New England Dairies, Inc.*, 219 Conn. 1, 14, 591 A.2d 1261 (1991). "The size of the verdict alone does not determine whether it is excessive. The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption. . . . Every reasonable presumption in favor of the correctness of the court's refusal to set aside the verdict as excessive should be

---

[11] General Statutes § 52-216a provides in relevant part: "If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. . . ."

indulged . . . and its ruling will not be disturbed unless there is a clear abuse of discretion." (Citations omitted; internal quotation marks omitted.) Id.

The following additional facts are germane to this issue. At trial, the defendant testified that, as a result of relying on Seven Oaks' misrepresentations, she incurred attorney's fees and costs and moving and rental expenses. She also testified that she moved out of her home as a result of advice given to her by Chodos and, while the property was vacant, pipes burst in the home, resulting in water and mold damage. The defendant also presented the testimony of expert witness Anthony N. Parise, an insurance adjuster specializing in property damage, who estimated that it would cost $670,804.42 to repair the home.

The defendant sought damages in the amount of $450,000, to cover the cost of paying her original mortgage for three years. The defendant additionally claimed damages in the amount of $270,000 for the Seven Oaks' mortgage and $670,000 for water and mold damage caused to her home while it was vacant.

During its charge to the jury, the court instructed that any money damages it awarded on the misrepresentation count should compensate the defendant "for any losses that she incurred due to her having reasonably relied upon any misrepresentation." The court noted that "[a] damage award in this count . . . may include amounts to compensate for consequential damages. These are damages which are or were reasonably foreseeable to Seven Oaks or which should have been reasonably foreseeable to Seven Oaks, if [it was] acting appropriately, to be the natural and probable results of a misrepresentation."

There is sufficient evidence in the record, based on the defendant's testimony and Parise's testimony, to

support the jury's verdict. Although the amount of damages awarded is substantial, it does not represent all the damages that the defendant sought. "Moreover, the amount of a damage award is a matter particularly within the province of the jury, and the assessment of damages always defies any precise mathematical computation." *Shegog* v. *Zabrecky*, 36 Conn. App. 737, 752, 654 A.2d 771, cert. denied, 232 Conn. 922, 656 A.2d 670 (1995). We also note that the court properly instructed the jury on determining damages and "[u]nless there is some indication to the contrary, a jury is presumed to follow the court's instruction." *State* v. *Galarza*, 97 Conn. App. 444, 453–54, 906 A.2d 685, cert. denied, 280 Conn. 936, 909 A.2d 962 (2006). We find no support in the record to indicate that the court abused its discretion in denying Seven Oaks' motion for remittitur, and, accordingly, we will not disturb that ruling.

IV

Seven Oaks next claims that the court improperly failed to sustain its objection to the defendant's claim for a jury trial on her counterclaim. Specifically, it argues that because the claims were equitable in nature, they were inappropriate for a jury trial. We do not agree.

Although "foreclosure actions are equitable in nature and, therefore, do not give rise to a right to a jury trial under article first, § 19, of the Connecticut constitution . . . [w]hen legal and equitable issues are combined in a single action, whether the right to a jury trial attaches depends upon the relative importance of the two types of claims. Where incidental issues of fact are presented in an action essentially equitable, the court may determine them without a jury in the exercise of its equitable powers. . . . Where, however, the essential basis of the action is such that the issues presented would be properly cognizable in an action of law, either party has a right to have the legal issues tried to the jury,

even though equitable relief is asked in order to give full effect to the legal rights claimed . . . . Because a counterclaim is an independent action . . . . the question presented is whether the defendants' counterclaim is essentially legal or essentially equitable. . . . This analysis must be performed in the context of the pleadings when read as a whole. (Citations omitted; internal quotation marks omitted.) *Northeast Savings, F.A.* v. *Plymouth Commons Realty Corp.*, 229 Conn. 634, 641–42, 642 A.2d 1194 (1994).

In the present case, Seven Oaks' foreclosure action is equitable; however, the defendant's counterclaim seeking damages for CUTPA violations, breach of contract and negligent misrepresentation indisputably was legal in nature. See id., 642 (holding that counterclaim in foreclosure action seeking damages for breach of contract, breach of fiduciary duty and negligence constitutes independent legal action triable to jury). We conclude, therefore, that because the defendant's counterclaim was legal in nature, it did warrant a jury trial.

V

Seven Oaks finally claims that the court improperly permitted the defendant's expert witness to testify with respect to damages. We disagree.

We first set forth the legal principles that guide our disposition of Seven Oaks' claim. Where property damage has occurred, "[t]he burden is on the plaintiff to present evidence which affords a reasonable basis for measuring her loss." (Internal quotation marks omitted.) *Spera* v. *Audiotape Corp.*, 1 Conn. App. 629, 633, 474 A.2d 481 (1984). Under Connecticut law, "[d]amage to real estate is measured by the diminution in value to the plaintiff's property caused by the tortious acts of the defendant. Diminution in value may be determined by the cost of repairs, so long as the cost does not exceed the former value of the property and the

repairs do not enhance the value higher than it was prior to the damage." (Internal quotation marks omitted.) *Schlichting* v. *Cotter*, 109 Conn. App. 361, 371 n.9, 952 A.2d 73, cert. denied, 289 Conn. 944, 959 A.2d 1009 (2008); 2 D. Pope, Connecticut Actions and Remedies, Tort Law (1993) § 26:04, p. 26-6.

In the present case, the defendant offered expert testimony to establish the cost to repair her home. "Concerning expert testimony specifically, the trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . . Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *Russo* v. *Phoenix Internal Medicine Associates, PC*, 109 Conn. App. 80, 87, 950 A.2d 559 (2008).

The following additional facts aid our review of Seven Oaks' claim. After the defendant moved out of her home, the pipes burst, causing water damage. The defendant called Parise to testify to the extent of the damage and the estimated cost of repair. Parise testified that he is a chartered professional commercial underwriter and a certified insurance consultant in Connecticut. Parise has been an insurance adjuster, licensed in the states of Connecticut, New York and Massachusetts, since 1989. His primary job is to determine the cost of repair after a building has sustained damage. He has made thousands of these determinations since 1989 and at least 500 in Connecticut. Parise further testified that he is familiar with home repair costs in Greenwich and, at the defendant's request, he estimated the cost to repair her home. His estimate was based on a room-by-room assessment of her home, including the analysis

of a mold expert brought in to confirm whether the property had sustained mold damage. Parise rendered a fifty-four page written report on the property, estimating that it would cost $670,804.42 to repair the water damage. Over Seven Oaks' objections, the court permitted Parise's testimony and noted that it was being offered to show the estimated water damage.

On the basis of our careful review of the record, we conclude that the court correctly permitted Parise to testify as a property damage expert. At the time of trial, he had sixteen years of experience as a property damage adjuster, making him particularly suited for the task of determining the cost to repair the defendant's home. We are not persuaded by Seven Oaks' argument that Parise is unqualified as a property damage expert because he is not a contractor or an engineer, for this court has long found that "it is not essential that an expert witness possess any particular credential, such as a license, in order to be qualified to testify, so long as his education or experience indicate that he has knowledge on a relevant subject significantly greater than that of persons lacking such education or experience." (Internal quotation marks omitted.) *Pettit* v. *Hampton & Beech, Inc.*, 101 Conn. App. 502, 514, 922 A.2d 300 (2007); *Conway* v. *American Excavating, Inc.*, 41 Conn. App. 437, 448–49, 676 A.2d 881 (1996). For the foregoing reasons, we conclude that the court did not abuse its discretion by permitting Parise to testify as a property damage expert.

The judgment is reversed only as to the CUTPA claim and the case is remanded with direction to vacate the court's awards for fees and damages relating to that claim. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.