FRANK FORRESTT ET AL. *v.* PAUL S. KOCH ET AL.
(AC 30502)

Flynn, C. J., and Beach and Pellegrino, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued February 9—officially released June 22, 2010

*Vincent F. Sabatini,* with whom, on the brief, was *James V. Sabatini,* for the appellants (plaintiffs).

*David W. Carroll,* pro hac vice, with whom was *Jeffrey F. Buebendorf,* for the appellees (defendants).

*Opinion*

FLYNN, C. J. The plaintiffs, Frank Forrestt and Carolyn Forrestt,[1] appeal following the denial of their motion to set aside the jury verdict rendered in favor of the defendants, Paul S. Koch, an ophthalmologist, and East Lyme Laser Vision Center, LLP. On appeal, the plaintiffs contend that the trial court abused its discretion in failing to set aside the verdict due to the improper remarks of the defendants' counsel during his closing argument. They also argue that the prejudicial effect of the remarks was manifest in the short length of the jury's deliberations. We conclude that although the challenged remarks were improper, we lack any transcripts comprising the evidentiary record that would reveal the relative respective strengths and weaknesses of the plaintiffs' and defendants' cases. Absent such a record, we cannot determine the extent of any prejudicial effect of the challenged remarks that would warrant a new trial, nor can we determine that the court abused its discretion in denying the plaintiffs' motion to set aside the verdict. We also reject the argument that any prejudice or manifest injustice is shown by the length of the jury's deliberations. We therefore affirm the judgment of the trial court.

On August 7, 2006, the plaintiffs filed an amended complaint in which they alleged the following facts. In January, 2003, Forrestt consulted with East Lyme Laser Vision Center, LLP, concerning laser eye surgery. On January 28, 2003, Koch performed laser-assisted in situ keratomileusis, or LASIK, on Forrestt. Following the surgery, the defendants prescribed the plaintiff two medications, Ocuflox and Pred Forte. On February 15, 2003, Forrestt contacted the defendants and informed

---

[1] For the purposes of this opinion, we refer to Frank Forrestt and Carolyn Forrestt collectively as the plaintiffs and to Frank Forrestt individually as Forrestt.

them that he was experiencing problems with his left eye, which was bloodshot and painful. When Forrestt visited the defendants on February 20, 2003, for a standard postoperative examination, his left eye was swollen shut and the source of severe and constant pain.

The postoperative examination was conducted by a technician employed by the defendants and not by a physician. The technician told Forrestt that "everything would be fine," instructed him to continue taking the prescribed medication and provided him medication for his pain. Forrestt returned to the defendants' East Lyme office the following day, where a technician told him to discontinue the use of Pred Forte. The defendants also recommended that Forrestt travel to the defendants' Rhode Island office the next day for an examination. Upon arriving at the defendants' Rhode Island office on February 22, 2003, Forrestt was informed that no physician was available to see him. Forrestt told the defendants that he would travel to a nearby hospital to seek treatment if a physician were not available soon. The defendants persuaded Forrestt not to go to the hospital "because the hospital did not know about LASIK."

One of the defendants' physicians saw Forrestt and performed a debridement of his left eye. The defendants noted that pus was present in the eye but did not order or perform a culture. The following day, February 23, 2003, Forrestt was in extreme pain, was lacking sleep and was vomiting. The defendants initially told him to return to their Rhode Island office, but eventually Koch was able to examine him in East Lyme. Koch debrided Forrestt's left eye; he told Forrestt that the eye would be fine and that a culture was not necessary. In addition, Koch prescribed to Forrestt a steroid dose pack and pain medication. Koch examined Forrestt again on February 25, 2003, and told him that he was " 'out of the woods.' "

The next day, Forrestt sought treatment from Dimitri T. Azar, chief ophthalmologist at the Massachusetts Eye and Ear Infirmary in Boston. Azar diagnosed Forrestt as having a multiple organism corneal ulcer of the left eye with resulting persistent epithelial defect. The plaintiffs thereafter brought a two count complaint alleging that the defendants' treatment had been negligent.[2] Specifically, the plaintiffs alleged that the defendants had failed to diagnose properly and timely Forrestt's eye condition; perform a culture of his left eye to determine if he had a bacterial infection; discontinue Forrestt's use of Pred Forte when he exhibited symptoms of bacterial infection; have a licensed ophthalmologist or other physician available to examine Forrestt postoperatively rather than a technician; refer Forrestt to a specialist for treatment of the condition; and perform the LASIK procedure in a sterile environment. The plaintiffs alleged that Forrestt had suffered multiple injuries, including, inter alia, a corneal ulcer, loss of vision, swelling and inflammation of the eye, and physical and mental pain and suffering. They further claimed that as a result of the defendants' negligence, Forrestt had to undergo multiple eye surgeries and would require still more in the future in an attempt to correct his vision.

The defendants filed an answer in which they denied the material allegations of the complaint and asserted as a special defense that the plaintiffs were negligent in failing to seek immediate and appropriate medical treatment; provide the defendants with all necessary and appropriate information; follow the defendants' instructions or warnings; and take reasonable and necessary precautions under the circumstances. The case was tried to a jury over a period of two weeks. At the close of their case, and prior to closing arguments, the

[2] Count one of the complaint sounded in negligence. Count two stated a claim for loss of consortium.

defendants withdrew their special defense of compara-
tive negligence.

During his closing argument, counsel for the defen-
dants made the following statements, which form the
basis of the plaintiffs' claim on appeal: "The plaintiffs
themselves, Mr. Forrestt, made a number of decisions.
And I want to make it clear that in talking about the
decisions that he made, I'm not being critical. He has
a right to make decisions regarding his health, and I
am not being critical of the decisions he's made. But
just as I am not being critical of the decisions that he
made, I would suggest that he shouldn't be critical of
the decisions, the good, solid decisions that were made
by [the defendants]. There's no need, no reason, no firm
ground for him to be critical of the decisions they made.
The decisions he made are that he had an absolute right
to make. . . .

"He said—Mr. Forrestt said that he would do anything
for his health. But one of the things we knew he wouldn't
do for his health is drive forty-five minutes away to see
somebody in Warwick. . . . He . . . made decisions
not to go to the emergency room when it was recom-
mended to him on at least two occasions, according to
[Elena] Young [an employee of the East Lyme Laser
Vision Center, LLP]. Again, I'm not criticizing those
decisions, but what I am saying is, we all make our
own decisions, and there's no reason why he should
attempt to criticize the defendants in the case. . . .

"Don't forget, there's a note in that chart for February
21, that same day, that says, patient will not, and not
is underlined, go to Warwick to see a doctor. Well,
there's the old saying: you can take a horse to water,
but you can't make him drink. If . . . Young says please
go to Warwick, and the patient says no, you can't force
him to. That's his choice. That's his choice. As we say,
we don't criticize him for it. We just say, don't criticize

us when you don't accept certain choices. Don't criticize us for making a doctor available when you refuse to go to a doctor. Don't criticize us about not having a doctor when you won't go to the emergency room."

Counsel for the plaintiffs neither objected to these comments during the course of the defendants' closing argument nor moved for a mistrial at any time. In his rebuttal argument, however, counsel for the plaintiffs addressed the statements directly: "The argument's being made that Mr. Frank Forrestt, the patient, the sick patient, was at fault for what happened to him. He was not at fault. Ladies and gentlemen, it's not even an issue in this case.

"Now, Her Honor is going to soon instruct you on what the applicable law is in this case, including what the issues are for you, ladies and gentlemen, to decide. And when you hear these instructions, you are not going to hear that there's any type of issue as to whether or not Mr. Frank Forrestt was at fault for what happened to him. You're not going to hear it because it's not an issue. But it's argued to you anyway. Why? Why are you hearing this? Because you can't defend what is undefendable, malpractice. To avoid dealing with the facts in the case and the issues in the case, we blame the patient. Deflect your attention on the issues in the case to distract you from doing the right thing. When you don't have the facts on your side, you argue the law. And when you don't have the law on your side, you argue the facts. When you have neither, you blame the patient. It's shameful."

Following closing arguments, the plaintiffs requested a jury charge to the effect that there was no issue of negligence on the part of Forrestt. In response, the court included in its charge: "Ladies and gentlemen, there is no issue in this case concerning any negligence on the part of Frank Forrestt." The plaintiffs took no

exception to the jury instructions delivered by the court. After deliberating for approximately thirty-five minutes, the jury returned a verdict in favor of the defendants. The court denied the plaintiffs' motion to set aside the verdict, which alleged that the remarks of the defendants' counsel during closing argument were improper and prejudiced the plaintiffs. The present appeal followed.

A trial court's decision on a motion to set aside a verdict entails the exercise of a broad legal discretion that we will not disturb in the absence of clear abuse. *Monti* v. *Wenkert*, 287 Conn. 101, 110–11, 947 A.2d 261 (2008). Our Supreme Court has instructed that "[t]he trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be indulged in favor of its correctness. . . . This is so because [f]rom the vantage point of the trial bench, a presiding judge can sense the atmosphere of a trial and can apprehend far better than we can, on the printed record, what factors, if any, could have improperly influenced the jury." (Citations omitted; internal quotation marks omitted.) *Skrzypiec* v. *Noonan*, 228 Conn. 1, 10–11, 633 A.2d 716 (1993).

The plaintiffs argue that the court abused its discretion in denying their motion to set aside the verdict. According to the plaintiffs, the defendants withdrew their special defense of comparative negligence prior to closing arguments "because, as raised by the plaintiffs, [the] defendants failed to offer any evidence that alleged [that] negligence on the part of [Forrestt] was the proximate cause of one or more of his injuries." They contend that the remarks of the defendants' counsel during closing argument were improper because they injected the legal and factual issue of comparative negligence into the case although the special defense had been withdrawn. They further argue that the remarks appealed to "the emotions, passions and prejudices" of the jury

and were made "to divert its attention from [its] duty to decide the case on the evidence." The plaintiffs maintain that the resulting prejudice caused by the remarks was manifest in the length of time the jury spent deliberating. Pointing to the length of the trial, the complicated nature of the expert testimony adduced and the multiple specifications of negligence that the jury was required to consider, the plaintiffs claim that it was impossible for the jury to complete its deliberations in thirty-five minutes.

"When a verdict should be set aside because of improper remarks of counsel . . . the remedy is a new trial." *Palkimas* v. *Lavine*, 71 Conn. App. 537, 542, 803 A.2d 329, cert. denied, 262 Conn. 919, 812 A.2d 863 (2002). In seeking a new trial on this ground, a party's burden of proof is twofold. First, it must demonstrate that the challenged remarks in fact were improper. Then, the party must show that the improprieties during argument warrant a new trial. Id., 546. The remedy of a new trial is appropriate in circumstances in which the improper comments of counsel caused "manifest injury to a litigant . . . ." (Internal quotation marks omitted.) *Murray* v. *Taylor*, 65 Conn. App. 300, 306, 782 A.2d 702, cert. denied, 258 Conn. 928, 783 A.2d 1029 (2001).

We first address whether the challenged remarks were improper. It is crucial to such an analysis to note that the defendants had withdrawn their comparative negligence defense. General Statutes §§ 52-572h (b) and 52-114 and Practice Book § 10-53 are pertinent provisions of law that provide the background for the remarks of the defendants' counsel during closing argument. Section 52-572h (b) provides in relevant part: "In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person . . . to recover damages resulting from personal injury, wrongful death or damage to property

if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section. . . ." Section 52-114 requires that "[i]n any action to recover damages . . . for negligently causing personal injury . . . it shall be presumed that such person . . . who was injured . . . was, at the time of the commission of the alleged negligent act or acts, in the exercise of reasonable care. If contributory negligence is relied upon as a defense, it shall be affirmatively pleaded by the defendant or defendants, and the burden of proving such contributory negligence shall rest upon the defendant or defendants." Practice Book § 10-53 similarly provides: "If contributory negligence is relied upon as a defense, it shall be affirmatively pleaded by the defendant and the defendant shall specify the negligent acts or omissions on which the defendant relies."

Our Supreme Court has recognized that "[t]he central purpose of [§ 52-572h] was to replace the harsh rule that contributory negligence was a complete defense in negligence cases with the rule that contributory negligence merely operates to diminish the amount recovered as damages in proportion to the percentage of negligence attributable to the person recovering." *Gomeau* v. *Forrest*, 176 Conn. 523, 525, 409 A.2d 1006 (1979). "When the legislature first enacted § 52-572h, abrogating the absolute bar of contributory negligence in favor of the doctrine of comparative negligence, that statutory abrogation applied only to injury to persons or damage to property arising out of the ownership, maintenance or use of a private passenger motor vehicle. . . . Public Acts 1972, No. 273, § 6. In 1973, the legislature broadened the comparative negligence doctrine to include negligence claims outside of the automobile no-fault system. . . . The purpose of comparative negligence is to ameliorate the harshness

of the complete bar to liability resulting from the common law defense of contributory negligence. W. Prosser, Torts (4th Ed. 1971) § 67. This change in policy was accomplished by mandating a comparison by the fact finder of the relative degrees of negligence of the plaintiff and the defendant. [Section] 52-572h (b) provides that contributory negligence shall not bar recovery in an action by any person . . . to recover damages resulting from personal injury [or damage to property] . . . if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought . . . . The purpose of the comparative negligence statute was to replace the former rule, under which contributory negligence acted as a complete defense, with a rule under which contributory negligence would operate merely to diminish recovery of damages based upon the degree of the plaintiff's own negligence." (Citation omitted; internal quotation marks omitted.) *Sevigny* v. *Dibble Hollow Condominium Assn., Inc.*, 76 Conn. App. 306, 326–27, 819 A.2d 844 (2003), quoting *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 585–86, 657 A.2d 212 (1995).

We agree with the plaintiffs that the remarks of the defendants' counsel during closing argument were improper. The defendants had withdrawn their comparative negligence defense that would have permitted the jury to consider the relative contributory negligence of the parties and determine whether the plaintiffs' recovery should be either barred or diminished in the case. Despite the repeated assurances by the defendants' counsel that he was "not being critical" of Forrestt and that he was "not criticizing [Forrestt's] decisions" made during his treatment by the defendants, the remarks of the defendants' counsel clearly invited the jury to consider Forrestt's actions as negligent and as a potentially causative factor in his injuries that should excuse

his own clients from criticism. Under their pleaded special defense of comparative negligence, the defendants were afforded the opportunity to adduce evidence in proof of their allegation that Forrestt was negligent for, inter alia, failing to follow the instructions and warnings of the defendants and failing to take reasonable precautions under the circumstances. At the close of their case, and prior to argument, however, the defendants withdrew the special defense. The repeated remarks of the defendants' counsel concerning Forrestt's decisions, therefore, allowed the defendants to insinuate Forrestt's negligence after having been relieved of the burden of proving as much by a preponderance of the evidence.

Although we cannot countenance the remarks of the defendants' counsel under the circumstances of this case, neither can we conclude that the plaintiffs are entitled to a new trial as a result. Counsel for the plaintiffs did not object to the remarks during the closing argument of the defendants' counsel, and he at no time moved for a mistrial.[3] He took the opportunity, instead, to address the remarks directly and somewhat forcefully in his rebuttal argument. Further, the plaintiffs' counsel later requested and was granted a curative jury instruction stating clearly and plainly that there was no issue concerning Forrestt's negligence for the jury to decide. No objection was raised to the jury instructions, including the curative instruction, provided by the court.

The plaintiffs' sole argument to support their claim that the remarks of the defendants' counsel caused them manifest injury is the fact that the jury deliberated for only thirty-five minutes following the presentation

---

[3] A mistrial, if granted, might have required the plaintiffs to bear the expense of retrial; however, a party to a case cannot wait until after a verdict is rendered to raise issues that the trial court, if alerted to them, might have reached and remedied by some further action during trial.

of evidence over two weeks. However, the time a jury spends in deliberation cannot form the basis of a claim that its verdict was affected by improper influences. As we previously have stated, "[t]he length of time that a jury deliberates has no bearing on nor does it directly correlate to the strength or correctness of its conclusions or the validity of its verdict. In fact, the length of time of the jury's deliberations is a double-edged sword. A short deliberation, rather than being indicative of a lack of diligence, may in fact attest to the strength of the [prevailing party's] case." (Internal quotation marks omitted.) *Baldwin* v. *Jablecki*, 52 Conn. App. 379, 384, 726 A.2d 1164 (1999).

Finally, we note that in addition to the preceding, the record on appeal does not allow us to investigate more deeply any prejudice that the remarks by the defendants' counsel may have caused. The record before us consists of the pleadings, exhibits and transcripts of the parties' closing arguments and the court's jury instructions. It contains no transcripts of any testimony during trial. Such a record does not allow a proper evaluation of the relative strengths of the plaintiffs' and the defendants' cases or the possible effect that the challenged remarks during closing argument may have had. We certainly are mindful of the dilemma encountered by the plaintiffs' counsel in this case, who was faced with the burden of the expense of producing a lengthy trial transcript on appeal. However, this considerable burden of expense does not relieve an appellant of his obligation to provide this court with an adequate record from which to decide the issues on appeal. See Practice Book § 61-10.

The trial court, having heard all the testimony in the case, "was in the best position to assess the possible prejudice, if any, that may have resulted from counsel's comments, and to fashion an appropriate remedy from a range of possible alternatives." *Rizzo Pool Co.* v. *Del*

*Grosso*, 232 Conn. 666, 687, 657 A.2d 1087 (1995). Having thoroughly reviewed the record and the arguments of the parties on appeal, we cannot conclude that the court abused its discretion in denying the plaintiffs' motion to set aside the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.