******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RYAN K. BROWN, JR. *v.* DAVID
CARTWRIGHT ET AL.
(AC 43415)

Lavine, Alvord and Cradle, Js.*

*Syllabus*

The plaintiff sought to recover damages from the defendants C, I Co., and
H Co. pursuant to the Connecticut Product Liability Act (§ 52-572m et
seq.) in connection with personal injuries he sustained in single car
accident that occurred when the left front wheel of his vehicle fractured.
The jury returned a verdict in favor of the defendants. The plaintiff
thereafter filed a motion to set aside the verdict and for a new trial.
The plaintiff claimed in his motion, inter alia, that, after the jury had
retired to the deliberation room, the defendants' exhibits were timely
delivered to the jury room but the plaintiff's exhibits were not, constitut-
ing evidentiary impropriety. The jury returned its verdict approximately
ten minutes after it had received the plaintiff's exhibits. The trial court
denied the motion and rendered judgment in favor of the defendants,
from which the plaintiff appealed to this court. *Held*:

1. The plaintiff could not prevail on his claim that the trial court erred in
refusing to set aside the verdict and order a new trial on the ground
that court failed to ensure that the plaintiff's exhibits were with the jury
when it commenced deliberations: the plaintiff presented no evidence
that the jury began deliberations prior to the delivery of the exhibits,
the jury was afforded a fair opportunity to deliberate with all the exhibits
before it, and it was undisputed that the jury received all the exhibits
prior to returning its verdict; moreover, the fact that there was only a
short period of time between when the jury received the plaintiff's
exhibits and it reached a verdict, did not necessarily indicate a lack of
diligence but, rather, may have attested to the weakness of the plain-
tiff's case.

2. This court concluded that the plaintiff waived his unpreserved claim that
the trial court erred in refusing to set aside the verdict and order a new
trial due to juror misconduct: although the plaintiff claimed that the
jury may have begun deliberations prior to the delivery of his exhibits
or failed to give adequate consideration to his case, an examination of
the record indicated that the plaintiff did not bring the late delivery of
his exhibits to the attention of the court on the record prior to the
reading of the verdict, which would have given the court an opportunity
to investigate and take any remedial measures that may have been
required.

3. This court declined to review the plaintiff's claim that the trial court erred
in denying his motion to set aside the verdict on the basis that the
defendants' counsel unfairly prejudiced the jury by reading from docu-
ments not in evidence; the court granted the plaintiff's request for a
curative instruction to the jury at the time of the alleged improper
comments by counsel, an instruction which the court repeated in its
charge to the jury, and the plaintiff did not object to the jury instructions
as given by the court and, in doing so, waived any claim of error.

Argued December 1, 2020—officially released March 30, 2021

*Procedural History*

Action to recover damages for personal injuries sus-
tained as a result of an allegedly defective product, and
for other relief, brought to the Superior Court in the
judicial district of New London and tried to the jury
before *S. Murphy, J.*; verdict for the defendants; there-
after, the court denied the plaintiff's motion to set aside
the verdict and for a new trial, and rendered judgment
in accordance with the verdict, from which the plaintiff
appealed to this court. *Affirmed.*

*Fredrik Thor Holth*, for the appellant (plaintiff).

*Robert W. Maxwell*, pro hac vice, with whom was *David W. Case*, for the appellees (defendants).

*Opinion*

LAVINE, J. The plaintiff, Ryan K. Brown, Jr., appeals from the judgment of the trial court, following a trial to a jury, rendered in favor of the defendants, David Cartwright, Ironhorse Auto, LLC, operating as Central Hyundai of Plainfield, and Hyundai Motor America, Inc.[1] On appeal, the plaintiff challenges the propriety of the verdict on three grounds: (1) the court's failure to timely deliver the plaintiff's exhibits to the jury deprived him of a fair verdict; (2) the jury did not follow the court's instructions to consider all the evidence; and (3) opposing counsel's statements during cross-examination unfairly prejudiced the jury. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The plaintiff purchased a 2013 Hyundai Elantra (Elantra) from the defendants on September 16, 2013. Early in the morning of September 29, 2013, the plaintiff was driving from Farmington to his home in Groton. The plaintiff alleged that while he was driving in the left lane of Interstate 95, the left front wheel of the Elantra fractured, resulting in a single car crash that caused the plaintiff serious injuries. The plaintiff filed a product liability action against the defendants pursuant to General Statutes § 52-240b and the Connecticut Product Liability Act, General Statutes § 52-572m et seq.[2] The plaintiff alleged that a manufacturing defect in the wheel was the proximate cause of the crash.

The case was tried to a jury from June 26 to July 3, 2019. At trial, the parties disputed the cause and nature of the wheel fracture, including how it occurred and whether the wheel fully detached from the Elantra, and the extent of the injuries the plaintiff suffered.

Following closing arguments, the court instructed the jury not to begin deliberations until they had received all of the exhibits, the verdict form, and the interrogatories. After the jury had retired to the deliberation room, the following exchange between the court and counsel transpired:

"The Court: All right. Counsel, have you had an opportunity to go through the exhibits and make sure that the only exhibits going to the jury for deliberation are full exhibits?

"[The Plaintiff's Counsel]: Yes, Your Honor.

"[The Defendants' Counsel]: Yes, Your Honor.

"The Court: All right. If you wouldn't mind approaching the bench? The only change that was made to the jury form was adding the jury foreperson and the date."

Following a brief conference with counsel, the court stated that the charge and exhibits "are going to go to the jury along with the exhibits, and our clerk will let

the jury know that they may begin deliberations, and they need to pick a foreperson. . . . And then this court will stand in recess."

During its deliberations, the jury answered "no" to the following interrogatory: "Was the subject wheel defective because it did not comply with design specifications or performance standards?" The jury then notified the court that it had reached a verdict. The jury returned to the courtroom and the clerk read the jury's verdict finding in favor of the defendants. The court accepted the jury's verdict.

On July 9, 2019, the plaintiff filed a motion to set aside the verdict and for a new trial (motion to set aside) on the grounds that defendants' counsel had inflamed the jury by attempting to read from documents not in evidence and that the jury had failed to follow the court's instructions. With respect to his first ground, the plaintiff alleged in relevant part that "[the defendants' counsel] . . . read aloud from and described information to the jury derived from documents or sources not properly in evidence for the sole purpose of inflaming the emotions of the jury or creating undue partiality . . . and did so inflame the emotions of the jury or create partiality." With respect to the second claim in his motion to set aside, the plaintiff alleged in relevant part:

"6. The jury failed to follow the court's instructions and deliberated without reviewing, considering and/or having all of the evidence properly before it and therefore, resulted in a verdict based upon ignorance, partiality, speculation, mistake, conjecture, or a combination of two or more thereof.

"7. The jury failed to follow the court's instructions and deliberated without reviewing, considering and/or having all of the evidence properly before it and therefore, resulted in a verdict based upon misconduct, failure to follow the law, or both."

The defendants objected to the motion to set aside on the grounds that the statements of their counsel were not harmful and the jury verdict was fully consistent with the law and the weight of the evidence. The plaintiff replied to the objection, alleging that "due to an error, all of the plaintiff's trial exhibits remained in the courtroom until at least 4:30 p.m., although the jury had been excused a substantial amount of time earlier to deliberate. Because the plaintiff's exhibits had not been delivered to the jury in a timely manner, at 4:28 p.m., the undersigned contacted the clerk's office by telephone after searching the jury clerk and case flow coordinator's offices for available staff to alert the judge. At least several minutes passed following the conclusion of the call to the clerk's office and, thereafter, the plaintiff's exhibits were delivered to the jury at approximately 4:35 p.m. The verdict was reached and

the [court] was back on the record for rendering and acceptance of the verdict at 4:47 p.m. Therefore, in order to have followed the court's instructions as described above, the jury must have elected a foreperson, reviewed thousands of pages of documents and deliberated, all within a span of ten minutes. This is not only unlikely, but impossible." (Footnotes omitted.)

The court heard the plaintiff's motion to set aside on August 13, 2019, at which time, counsel for the plaintiff testified that the defendants' exhibits were timely delivered to the jury, but the plaintiff's exhibits were not. According to the plaintiff's counsel, the jury retired to deliberate at "approximately four o'clock . . . ." On direct examination by his law partner, the plaintiff's counsel testified as follows:

"Q.: All right. And then what came to your attention relative to your exhibits—plaintiff's exhibits?

"[The Plaintiff's Counsel]: [We] were waiting in . . . the courtroom for approximately half an hour. The defendants' exhibits were taken into the jury room at about 4:28.[3]

"I started to look for the jury clerk, as well as the case flow coordinator because I could not find our clerk, and I did not want to walk into the back hall where the jurors were. I went to the jury clerk's office. I went to the case flow coordinator's office. Those offices were vacant and the lights were off.

"I came back to the courtroom. Our exhibits were still here, the plaintiff's exhibits. I called the clerk's office downstairs. . . . That call lasted about a minute, and then a clerk . . . came up within several minutes, took in two trips, our exhibits—the plaintiff's exhibits into the jury room to deliberate for its deliberations.

"The jury then returned with a verdict at approximately 4:40 to 4:45 p.m. And then we went back on the record at 4:47.

"Q.: So again, how many minutes from the time that the plaintiffs' exhibits were submitted to the jury and the decision was rendered?

"[The Plaintiff's Counsel]: Approximately ten, if that many."

The plaintiff's counsel also testified that his exhibits "in total were several thousand pages and the exhibits on the specifications in liability alone would have been hundreds of pages . . . ." On cross-examination by the defendants' counsel, the plaintiff's counsel testified that his exhibits were delivered to the jury at 4:35 p.m., and the court went back on the record twelve minutes later. He admitted that he did not have any direct evidence that the jury had reached a verdict before the delivery of his exhibits, "other than the inference itself."

The court denied the motion to set aside in a memo-

randum of decision on September 12, 2019. The court first stated that "counsel's questioning during cross-examination was not so prejudicial as to deny the plaintiff a fair trial and, further, curative instructions given immediately following objections raised by [the] plaintiff's counsel were sufficient to cure any potential prejudice to the plaintiff." The court rejected the plaintiff's argument that the "rendering of a verdict in this case within ten minutes is impossible and in fact, indicative of juror misconduct in failing to consider all the evidence and/or indicative of undue prejudice induced during the cross-examination of the plaintiff." The court explained that it could not infer misconduct from the length of the jury's deliberation and that it could not set aside the verdict when there was evidence supporting the jury's finding.[4] With regard to the plaintiff's claim that the jury failed "to follow the court's instructions and/or deliberated without reviewing, considering and/or having all the evidence before it," the court explained that there was nothing before it to demonstrate that the jurors improperly discussed the case among themselves prior to deliberations, that there was no dispute that the jurors had all the exhibits before them prior to indicating that they had reached a verdict, and that the jury was allowed to credit the testimony of the defendants' expert witness. The court rendered judgment on the verdict at that time. This appeal followed.

We first set forth the well-known standard of review. "[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling." (Internal quotation marks omitted.) *Sovereign Bank* v. *Licata*, 116 Conn. App. 483, 492, 977 A.2d 228 (2009), appeal dismissed, 303 Conn. 721, 36 A.3d 662 (2012).

I

The plaintiff first claims that the trial court erred by refusing to set aside the verdict and order a new trial, because the delay in delivering his exhibits, while the defendants' exhibits were delivered promptly, constitutes a harmful "evidentiary impropriety" meriting reversal. We do not agree.

In support of his claim, the plaintiff points to Practice Book § 16-15 (a), which provides that "[t]he judicial authority shall submit to the jury all exhibits received in evidence." He states in his brief that "it necessarily follows that to effectuate this rule, the jury receive the entire record concurrently when it retires to deliberate," and that the "unintentional but unjust delay" was harmful, relying on *Kortner* v. *Martise*, 312 Conn. 1, 27–28, 91 A.3d 412 (2014), in which the submission of an exhibit to the jury that was not introduced at trial

constituted harmful error.

The plaintiff characterizes the claimed error as a failure by the court to ensure that the plaintiff's exhibits were with the jury when it commenced its deliberations. It is undisputed, however, that the jury received all the exhibits prior to returning its verdict. The plaintiff represented in his reply to the motion to set aside, as well as in his testimony at the hearing on the motion to set aside, that the jury received all of the exhibits by 4:35 p.m., that the jury reached a verdict "at approximately 4:40 to 4:45 p.m.," and that the jury returned to the courtroom at approximately 4:47 p.m., at which time the verdict was read. He presented no evidence that the jury began deliberations prior to the delivery of all the exhibits. If a mistake occurred which resulted in the delayed delivery of exhibits, it was resolved and the jury was afforded a fair opportunity to deliberate with all of the exhibits before it. Thus, the plaintiff's claim that harm resulted is purely speculative. "[T]he time a jury spends in deliberation cannot form the basis of a claim that its verdict was affected by improper influences." *Forrestt* v. *Koch*, 122 Conn. App. 99, 111, 996 A.2d 1236 (2010). "A short deliberation, rather than being indicative of a lack of diligence, may in fact attest to the [weakness] of the [nonprevailing party's] case.§ (Internal quotation marks omitted.) Id. The plaintiff's claim, therefore, fails.

II

The plaintiff's second claim is that the trial court erred by refusing to set aside the verdict and order a new trial due to juror misconduct. He claims that, in returning a verdict mere minutes after receiving the plaintiff's exhibits, the jury necessarily could not have followed the court's instructions in full.

The following additional facts are relevant to our disposition of this claim. The court instructed the jury in relevant part:

"The Court: The deliberations should not begin until you receive all the exhibits and you have first selected a jury foreperson. No one will hurry you. You may have as much time as you need to reach a verdict. . . .

\* \* \*

"The Court: Again, do not select a foreperson or begin any deliberations until you have the exhibits, verdict form, and interrogatories, and the alternate jurors have left the jury room."

The jury thereafter retired to the jury deliberation room. After the jury notified the court that it had reached a verdict, the following colloquy occurred:

"The Court: All right. So counsel, it's my understanding that the jury has reached a verdict. That's what I've been told, so we're going to call the jurors in.

"The Court: Welcome back. Counsel, please stipulate?

"[The Plaintiff's Counsel]: Yes, Your Honor.

"[The Defendants' Counsel]: Yes, Your Honor.

"The Court: All right. Madam Clerk?"

The clerk then asked the jury if it had agreed on a verdict, to which the jury answered in the affirmative. The clerk read the verdict aloud, stating: "In the matter of Ryan K. Brown, Jr., versus [the defendants], defendants' verdict: We, the jury, find in favor of the defendants . . . against the plaintiff, Ryan K. Brown, Jr." The court accepted the verdict. The plaintiff objected to the verdict six days later when he filed a motion to set aside. The plaintiff alleged in his reply to the defendants' objection that the jury did not receive the plaintiff's exhibits until approximately 4:35 p.m., a "substantial amount of time" after it had been excused,[5] and that the jury notified the court that it had reached a verdict approximately ten minutes later.

The plaintiff's claim at its core is one of jury misconduct. He claims it was not possible for the jury to review his thousands of pages of exhibits, beyond a mere cursory look in the roughly ten minutes between when it received his exhibits and when it delivered its verdict. As a result, he claims, the trial court erred in failing to set aside the verdict because the jury must have failed to comply with the court's instruction to "consider all the evidence" in reaching a verdict. The plaintiff also argues that, if the jury began consideration of the defendants' exhibits while it was waiting for the plaintiff's exhibits, it violated the court's instruction to wait until it had received all the exhibits.

In response, the defendants argue that it is not possible to infer solely from the length of deliberations that the jury did not consider the plaintiff's evidence. The defendants emphasize that there is no evidence, only speculation, that the jury began deliberations prematurely or failed to give adequate consideration to the plaintiff's case. They further argue that, even if there is error, we should not address it because the plaintiff failed to preserve the issue for review.

We agree with the defendants that the claim is not properly before this court for review. Our thorough examination of the record indicates that the plaintiff did not bring the late delivery of his exhibits to the attention of the court prior to the reading of the jury's verdict. The plaintiff argues that he alerted the court "several times prior to the entry of judgment: once by alerting the court clerk charged with delivering the exhibits to the jury room, thereafter by motion and memoranda filed with the court, and thereafter by testimony offered at the August 13, 2019 hearing." The defendants respond that the matter was not raised on the

record as an objection to the verdict at a time when the court could have addressed it prior to the reading of the verdict.[6] The record clearly demonstrates that the defendants are correct. The plaintiff, therefore, failed to preserve his claim for review.

It is well established that "[waiving] the objection and [taking] the chances of a favorable verdict, [precludes] . . . taking the exception after verdict." *State* v. *Worden*, 46 Conn. 349, 368 (1878). "We repeatedly have expressed our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, with the assignment to such errors as grounds of appeal." (Internal quotation marks omitted.) *Antonucci* v. *Antonucci*, 164 Conn. App. 95, 127, 138 A.3d 297 (2016). Although the court addressed the plaintiff's motion to set aside after accepting the verdict, this court has stated, in the context of jury instructions, that if possible, a party must "object in a timely fashion to allow the trial court an opportunity to correct any claimed error in the procedure or the instruction. Raising that objection as an issue for the first time in a motion to set aside the verdict, obviously does not allow such a possibility because the jury has been excused. When we speak of correcting the claimed error, we mean when it is possible during that trial, not by ordering a new trial." *Powers* v. *Farricelli*, 43 Conn. App. 475, 478, 683 A.2d 740 (1996). Similarly, in *Misiurka* v. *Maple Hills Farms, Inc.*, 15 Conn. App. 381, 385, 544 A.2d 673, cert. denied, 209 Conn. 813, 550 A.2d 1083 (1988), this court stated that the failure to make a clear objection to a motion for apportionment "[denied] the trial court an opportunity to re-examine its ruling at a time when it could still be modified and any defect cured." Had the plaintiff brought his concern regarding the timely delivery of his exhibits to the attention of the court prior to the reading of the verdict, the court could have investigated and taken whatever remedial measures that may have been required, if any, before the jury's verdict was read in open court.[7] See also *State* v. *Cosby*, 6 Conn. App. 164, 174, 504 A.2d 1071 (1986) (stating that parties "must take some modicum of responsibility for conserving scarce judicial resources").

In the alternative, the plaintiff argues that, even if his claim is unpreserved, "an error by court personnel in properly delivering the exhibits to the jury 'trumps the waiver by the plaintiff's counsel,'" citing *Kortner* v. *Martise*, supra, 312 Conn. 26 n.9. He argues that the process was "tainted" by the untimely delivery of his exhibits to the jury, citing *Kortner*. As we stated in part I of this opinion, the plaintiff has not demonstrated prejudice from the alleged error by court personnel. Moreover, *Kortner* is instructive in explaining why the plaintiff's claim fails. In that case, the jury submitted a

question to the court clerk regarding a particular exhibit not in evidence that it had inadvertently received. Id., 18. The court clerk answered the question and stated that it would not be necessary to alert the judge. Id. After the court accepted the verdict and adjourned the proceeding, "one of the jurors . . . expressed confusion about the fact that he had not heard about [the plaintiff's exhibit] during trial." Id., 17. The court replied that it had been marked as a full exhibit and excused the jurors. Id. Upon learning of the error, the plaintiff filed a motion to set aside the verdict and for a new trial. Id., 19.

On appeal, this court concluded that the plaintiff had not waived the claim. The court clerk's failure to notify the court of the jury's question "deprived the plaintiff and the trial court of the opportunity to rectify the inadvertent mistake of providing [the plaintiff's exhibit] to the jury for deliberation." Id., 26. "Instead, the trial court required the plaintiff to prove that [the exhibit] probably prejudiced the jury." Id., 45. *Kortner* thus highlights the seriousness of a jury deliberation error of which the court and the parties are *not* aware prior to the reading of the verdict. In the present matter, unlike in *Kortner*, the plaintiff was aware of the issue with the exhibits *prior* to the reading of the verdict and did not take advantage of his opportunity to bring it to the court's attention.[8] We conclude that the claim of jury misconduct is waived.

### III

The plaintiff next claims that the court erred in denying his motion to set aside the verdict on the basis that the defendants' counsel unfairly prejudiced the jury on two occasions by reading from documents not in evidence during his cross-examination of the plaintiff and one of the plaintiff's expert witnesses. We do not agree.

The following additional facts are relevant to our resolution of this claim. The plaintiff testified at trial that, prior to the crash, he had attended an event in Farmington hosted by a chapter of his fraternity, Alpha Phi Alpha. He described the event as "a Miss Black and Gold Scholarship Pageant . . . . That entails a group of women submitting, like, their transcripts and presenting different talents. Whether that's singing, dancing, playing an instrument, whatever the case is, and ultimately a winner is crowned and they're given, you know, X number of scholarship moneys." He testified that no alcohol or disorderly conduct was involved. The plaintiff was returning home to Groton around 3 a.m. when the crash occurred.

On cross-examination, the defendants' counsel suggested that alcohol had been served at the event, citing general Alpha Phi Alpha event guidelines regarding alcohol and inquiring about charges of binge drinking

that had been brought against other chapters of the fraternity. The plaintiff acknowledged that alcohol was allowed at certain fraternity functions but again denied its presence at the event he attended. The defendants' counsel then inquired about flyers that were generally distributed to advertise Alpha Phi Alpha events. The defendants' counsel attempted to impeach the plaintiff by asking him questions about the content of a flyer purportedly advertising the scholarship event the plaintiff had attended on September 28, 2013. The plaintiff denied recognizing the flyer. When the defendants' counsel asked the plaintiff about the content of the flyer, the plaintiff's counsel objected:

"[The Defendants' Counsel]: Is it fair to say, Mr. Brown, that the flyer advertis[ing] this event shows a scantily clad woman with—under the title of [Phorbidden Phruit]?

"[The Plaintiff's Counsel]: Objection.

"The Court: Grounds?

"[The Defendants' Counsel]: Is that what this document—

"[The Plaintiff's Counsel]: Relevance first, Your Honor, and second, he's testified that he's never seen that document.

"The Court: All right. [Counsel]?

"[The Plaintiff's Counsel]: So there's—

"[The Defendants' Counsel]: This is impeachment evidence, Your Honor.

"[The Plaintiff's Counsel]: There's no foundation laid.

"The Court: All right. There's no foundation laid with respect to the document. He's never seen the document. He doesn't recognize the document. I'll sustain the objection."

The defendants' counsel then asked the plaintiff to read from highlighted portions of the document. When the plaintiff again denied recognizing the document, the defendants' counsel asked the plaintiff, "You didn't receive a message saying that the—" The court interjected and instructed the defendants' counsel "not to read from a document that's not been admitted into evidence." The defendants' counsel then attempted to ask the plaintiff if he had seen the document on the Alpha Phi Alpha website, referencing it as "the forbidden fruit advertisement . . . ." The plaintiff's counsel again objected; the court sustained the objection. The defendants' counsel then stated that he wanted to ask the plaintiff a hypothetical question, spurring further objection from the plaintiff's counsel. The court asked the jury to step out and reminded the defendants' counsel of its earlier ruling, stating:

"The court's made its ruling with respect to this line

of questioning. He doesn't remember. It's been asked and answered. He said he does not know. So if the hypothetical is going to deal with this forbidden fruit phrase, the court is going to sustain the objection."

The court allowed the defendants' counsel to lay a foundation outside the presence of the jury. The plaintiff's counsel objected to the defendants' counsel's proffer. The court sustained the objection, reiterating its earlier ruling that the foundation laid for the document was insufficient. The court prohibited questions regarding information coming from the flyer. The plaintiff requested that the court give a curative instruction to the jury. After the jury re-entered the courtroom, the court instructed the jury: "I just would like to remind the jury, and I will tell you more about this in jury instructions, but an attorney's comments or questions are not evidence in this case."

On July 2, 2019, the plaintiff called Thomas Eagar as a rebuttal expert. The plaintiff proffered Eagar as an expert in the field of materials science and physics. Counsel for the defendants was permitted to conduct a voir dire of Eagar regarding his credentials. During the voir dire, the defendants' counsel inquired about instances in which the scope of Eagar's testimony had been limited by judges in other cases. The defendants' counsel attempted to place in evidence a Kentucky district court order limiting the scope of Eagar's testimony. The plaintiff's counsel objected on the grounds of hearsay and authentication. The court sustained the objection, declining the request from the defendants' counsel to take judicial notice of the case citation. The court stated: "I think the witness stated that you were mischaracterizing what happened, or the testimony in that case, and this court's not going to be bound by the ruling of an out of district case. So, I'm not sure how that affects what we're doing right here. I'm [going to] sustain the objection on the ground of relevance and lack of foundation." The defendants' counsel asked Eagar about other cases in which the scope of his testimony had been limited or contradicted. The plaintiff's counsel objected again, and the court heard argument outside the presence of the jury. The plaintiff's counsel contended that the defendants' counsel was presenting hearsay and reading from documents not properly before the court. The defendants' counsel responded that he was attempting to impeach the witness for giving allegedly inaccurate testimony. The court ruled as follows:

The Court: "First of all, whether or not testimony has been limited is one thing. This court doesn't have the benefit of going into those particular cases and finding out the exact nature of the limitation and/or the reasons for the limitation. So what you're doing is, you are [reading]⁹ from documents that lack foundation at this point in time, and that could very well, and I'm not

saying that you're doing this, counsel, but because I do not have the benefit of looking at that document, perhaps you could be putting some sort of, you know, a spin on the way the—the holding is being presented . . . and so, instead, you're just—you're summarizing these documents for the court in front of the jury, and your summaries are coming from documents that are not full exhibits. So by way of asking these questions, you're basically [arguing], quote, from the document." (Footnote added.)

The court instructed counsel as follows:

The Court: "So the court would instruct both counsel again . . . not to [read] from documents that are not entered into the court as full exhibits. This witness was asked, this witness did indicate that his testimony has been limited on occasions. I mean, I will allow questioning about it, but I will not allow you to pick up a document, hold it in front of your hand in front of a jury, and proceed to basically read from the document as part of your question."[10]

The jury returned to the courtroom, and the defendants' counsel asked Eagar to read from a page of the order or opinion he was using to impeach the witness. The plaintiff's counsel objected. The court again had the jury step out and reminded the defendants' counsel to ensure he was not having the witness read from a document not in evidence, as opposed to merely refreshing his recollection. Thereafter the defendants' counsel asked Eagar to review the document to refresh his recollection, and then asked, per the court's ruling, if the scope of his testimony had been limited. The defendants' counsel then concluded his cross-examination.

When the court instructed the jury at the conclusion of evidence, it stated in part: "There are a number of things that may have been said or heard during the trial which are not evidence and which you cannot rely on as evidence in deciding whether a party has proven a claim or defense. For example, the statements made by lawyers . . . are not evidence. A question is not evidence. It is the answer, not the question or the assumption made in the question, that is evidence."

The plaintiff now claims, after the court granted his request for a curative instruction[11] and after the court issued an instruction on the evidentiary value of statements made by counsel as part of its charge to the jury, that the court's instructions were insufficient to remedy the alleged harm. He argues in his brief that the first curative instruction and the charge to the jury were "insufficient and failed to cure the harm caused by the defendants' conduct. The inquiry and resulting damage to the impartiality of the jury . . . had been done." The plaintiff analogizes this case to that of *Yeske* v. *Avon Old Farms School, Inc.*, 1 Conn. App. 195, 204, 470 A.2d

705 (1984), in which this court held that comments made by counsel casting aspersions on opposing counsel, among other remarks, "went far beyond the boundaries of legitimate comments made during the heat of forensic warfare. . . . No curative instruction by the court could remedy their maliciousness." We do not agree. By requesting curative instructions and not objecting to the instructions given by the court, the plaintiff waived any claim of error.

"[T]he impact of . . . improper [questions and] arguments can usually be nullified by the court's curative instruction." *Fonck* v. *Stratford*, 24 Conn. App. 1, 4, 584 A.2d 1198 (1991). If a party objects to an instruction, "in order [t]o preserve [the] exception . . . a party must either submit a written request to charge or state distinctly the matter objected to and the ground of objection. . . . It is our long-standing position that [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge. . . . The purpose of the rule is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Rendahl* v. *Peluso*, 173 Conn. App. 66, 106, 162 A.3d 1 (2017).

Our review of the record discloses that the plaintiff did not object following the curative instruction that the court issued concerning the event flyer. Moreover, the court repeated this instruction in its charge to the jury. Prior to issuing the charge, the court stated to counsel: "I just want to confirm that you've had an opportunity to look at the charge and the interrogatories, and you're satisfied that those requested changes were made." Both counsel replied in the affirmative and neither of them objected to the court's proposed charge. The court then gave the charge that counsel had reviewed. After it excused the jurors to the deliberation room, the court asked both counsel if they wished to comment on the charge. Counsel for the plaintiff replied that "only if the changes reflect as you read it into the record, I have—I have no comments." The court discussed several unrelated revisions but, in the absence of any objection, did not modify the charge with respect to the evidentiary value of statements by counsel. The court offered both counsel the opportunity to review the revised charge, and the plaintiff's counsel responded that he would "waive that." This colloquy clearly demonstrates that the plaintiff had several opportunities to object to the jury charge given by the court but did not do so.

The court took ameliorative action to remedy the plaintiff's claim that counsel for the defendants prejudiced the jury with its instructions to the jury. As the

plaintiff concedes in his brief, "a tailored and succinct instruction is the remedy short of a mistrial." "If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . Indeed, the courts have always given great weight to [curative] instructions in assessing claimed errors." (Citation omitted, internal quotation marks omitted.) *Pin* v. *Kramer*, 119 Conn. App. 33, 43, 986 A.2d 1101 (2010), aff'd, 304 Conn. 674, 41 A.3d 657 (2012).

"Waiver is the voluntary relinquishment of a known right. . . . To determine whether a party has waived an issue, the court will look to the conduct of the parties. . . . [W]aiver may be effected by action of counsel. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal.§ (Citations omitted; internal quotation marks omitted.) *State* v. *Miranda*, 327 Conn. 451, 461, 174 A.3d 770 (2018); id., 462 (objection to improper testimony waived when "the defendant never requested earlier action from the trial court, affirmatively indicated that the court could remedy the issue through the final charge to the jury, and then ultimately approved of the court's proposed instructions"). In the present case, the plaintiff accepted the first curative instruction, which he himself had requested. The plaintiff then received and accepted, without objection, the benefit of a jury charge that addressed the conduct of the defendants' counsel with respect to both his reading from the flyer and his examination of Eagar. We, therefore, decline to review the plaintiff's claim that the court's instruction was improper.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] In this opinion, we refer to these parties, who were united in interest, represented by the same counsel at trial, and treated by stipulation as a single party, collectively as the defendants.

[2] The defendants filed an answer and special defenses. In their special defenses, the defendants alleged that (1) the plaintiff's claims were "either completely or partially barred pursuant to . . . [General Statutes] § 52-572h (b), insofar as he did not exercise ordinary caution and prudence for his own safety, nor did he exercise the care and prudence that a reasonable person in the plaintiff's position would have exercised," (2) the plaintiff failed to mitigate his damages, and (3) the plaintiff failed to preserve the allegedly defective wheel in the condition it was in at the time of the accident.

[3] On May 18, 2020, more than nine months following the August 13, 2019 hearing, the plaintiff filed a motion to rectify the record. In that motion, he sought to correct the text "[We] were waiting in the . . . courtroom for approximately half an hour. The defendant's exhibits were taken into the jury room at about 4:28. I started to look for the jury clerk . . . ." The plaintiff contended that the transcript should state: "[We] were waiting in the . . . courtroom for approximately half an hour after the defendants' exhibits were taken into the jury room. At about 4:28, I started to look for the jury clerk . . . ." The court denied the motion to rectify on June 30, 2020.

[4] The court again noted that, during the presentation of evidence, it had issued a cautionary jury instruction as to what constituted evidence and gave a jury charge to the same effect. In the absence of a showing that the jury disregarded its instructions, the court presumed that the jury heeded them.

[5] In his brief, the plaintiff characterizes the delay in delivery as "approxi-

mately one-half hour" after the defendants' exhibits had been delivered.

[6] The defendants also argue in their brief that under Practice Book § 16-35, the plaintiff failed to timely raise the issue in his motion to set aside the verdict. "Motions . . . to set aside a verdict . . . must be filed with the clerk within ten days after the day the verdict is accepted; provided that for good cause the judicial authority may extend this time. The clerk shall notify the trial judge of such filing. Such motions shall state the specific grounds upon which counsel relies." Practice Book § 16-35. The defendants argue that the allegations in §§ 6 and 7 of the plaintiff's motion failed to clearly state the specific grounds on which the plaintiff relied. Because we conclude that the plaintiff had an opportunity to raise the issue prior to the reading of the jury verdict and failed to do so, we do not address this argument.

[7] General Statutes § 52-223 provides: "The court may, if it judges the jury has mistaken the evidence in the action and has brought in a verdict contrary to the evidence, or has brought in a verdict contrary to the direction of the court in a matter of law, return them to a second consideration, and for the same reason may return them to a third consideration. The jury shall not be returned for further consideration after a third consideration."

Practice Book § 16-17 similarly provides: "The judicial authority may, if it determines that the jury has mistaken the evidence in the cause and has brought in a verdict contrary to it, or has brought in a verdict contrary to the direction of the judicial authority in a matter of law, return the jury to a second consideration, and for like reason may return it to a third consideration, and no more."

[8] The plaintiff contends in his reply brief that "what measures, if any, [he] could have further taken beyond alerting the clerk to the error while the jury was deliberating . . . is purely hypothetical." This attempt to shift responsibility onto the clerk is unavailing, as the plaintiff had ample opportunity to bring the matter to the court's attention and to put an objection on the record when court resumed, prior to the reading of the verdict.

[9] The trial court characterized the actions of the defendants' counsel as "testifying" from documents not in evidence.

[10] The trial court's admonition echoes what this court has frequently reminded counsel, that "it is improper to read from a document not in evidence." *State* v. *Fisher*, 57 Conn. App. 371, 380, 748 A.2d 377, cert. denied, 253 Conn. 914, 754 A.2d 163 (2000).

[11] We note also that the plaintiff requested that the court give a *brief* curative instruction.

――――――――――――――――――――